Spear, J.
Attention is called to several alleged errors in the record: 1. That the district court had no jurisdiction of the person of the plaintiffs in error. 2. That the proper parties were not before the court when the judgment was rendered; and that a stockholder, served and in court, was relieved of liability, and no one charged in his place. 3. That interest was erroneously charged against the defendants below. 4. That fees wei’e erroneously ordered paid to plaintiff’s attorneys. 5. That under the facts as to Homer C. Nellis no liability existed against him. They may bo considered in order :
First. Eor the purpose of making the question the demurrer of the plaintiff admits that the homo of the Little *327 Mountain Association was in Cuyahoga, and not in Lake county. The association was a necessary party to the suit, although it was, in this case, but a nominal party, as no relief was asked against it. Therefore, the question whether the court of common pleas had, at the inception,, jurisdiction of those parties who raised, by answer, the question of jurisdiction, depends on whether the corporation could be held to answer, in a case of this character, in a county other than the one in which it was situate and in which was located its principal office or place of business. We are favored with an ingenious brief to support the negative of this proposition. But we are inquiring rather as to the jurisdiction of the district court at the close of the litigation than of that of the common pleas at its beginning. To determine this question it is but necessary to keep in mind certain subsequent facts disclosed by the record. Tt will be noticed that every one of the plaintiffs in error, who sought to raise the question of jurisdiction in the common pleas, consented to a reference of the case for trial to a referee, and after rendition of judgment there, gave notice of appeal to the district court,*and perfected his appeal either by the giving of bond in the amount directed by the court, or otherwise, in conformity to the statute. There, too, they consented to a reference of the case to a referee for trial, appeared at the trial, when his report was filed promptly interposed their general exceptions to it, and appeared and wmre heard upon them in the district court. True, they occasionally raised the voice of protest, but it was done incidentally, and not in a way to invoke action of the court until after the case had came on for ti;ial. Can they now be heard to say that that court had not jurisdiction of their persons? We are not aware that the precise question, upon equivalent facts, has been judicially determined in this state, nor have we been able to find, outside of Ohio, a case presenting exactly this question. Adjudications in other states, however, are not likely to aid in its proper solution, because the practice in Ohio is essentially different from the practice in other states in removing *328 cases from general trial courts to appellate courts. While in many of the states, and perhaps in all except in our own, an appeal from a court of general jurisdiction is in the nature of a writ of error, whereby the appellate court passes upon the record, as to facts as well as law, does not hear additional or other evidence, but confines its adjudications to errors appearing upon the record, in Ohio the appeal itself vacates, without revisal, the whole proceeding as to findings of fact as well as law, and the case is heard upon the same or other pleadings, and. upon such competent testimony as maybe offered in that court. It takes up the subject of the action de novo, in respect to pleadings, necessary parties, trial and judgment, in like manner as if the cause had never been tried below. (Eor further discussion of these distinctions, see opinion of Swan, J., in Grant v. Ludlow, 8 Ohio St. 28.) The issues and questions, therefore, tendered in the appellate court are those presented as though for the first time, and it can make no manner of difference that the coux’t below erred as to some preliminaiy questions, or indeed as to any question. As the issues are presented when the case gdts to the appellate coux’t, unless amendment be thex’e permitted, the court takes them up and disposes of them. The question, therefore, of whether the comnxon pleas had jurisdiction of the persons of the plaintiffs in ex’ror was not of consequexxce, provided the appellate court had such jui’isdietion. Recurring to the record we find that the first move made in the district court by defendants was by those who were creditors to dismiss the appeal. This was for alleged want of jurisdictioxx.of the action, not for want of jurisdiction of their persons. Then followed consent to a inference for trial, and the fux’ther steps already stated. Not until the case had proceeded to tx’ial ixi the district court did they present to that court the question of jurisdiction over their pox’sons. Independent of the question of the effect of taking the case to that court by appeal, it would seem that these parties had given the court abundant jurisdiction of their persons.
But we ara xxot without authox-ity, which, ixx our opin *329 ion, bears upon the question. The case of Fee v. Big Sand Iron Co., 13 Ohio St. 563, approved in Shafer v. Hockheimer, 36 Ohio St. 219, is authority to the point that where, after judgment by default against a defendant not within the jurisdiction, the defendant appears in court to give notice of appeal, and has it entered, he can not be allowed afterward to deny the jurisdiction; that is, jurisdiction of the court.below; and the.reason he is held to have submitted to that jurisdiction is, that, by giving notice of appeal without questioning the jurisdiction of his person, he has entered an appearance. How different does a party stand in the appellate court, to which he has taken the case by appeal, where he, by consent to a reference, by motion and otherwise, makes an appearance there before he seeks to challenge the jurisdiction of that court as to his person. Allen v. Miller, 11 Ohio St. 374, is to the effect that where a defendant, in connection with a plea to the merits, interposes a plea to the jurisdiction as to his person, and that being first heard and decided adversely, then proceeds with the trial, is not thereby prevented from averring want of jurisdiction. At first blush this case might seem to be inconsistent with the holding in the later case, though the opinions are rendered by the same judge. Rut a reference to the language of the opinion, page 379, would appear to relieve it of seeming inconsistency. It is that “ the defendant, Miller, embraced the first occasion which offered, to wit, in his answer, to assert his objection to the jurisdiction of the court, nor did he waive that objection by any subsequent act on his part.” In the case of Fee v. Big Sand Iron Co. the defendant entered his appearance first and objected afterward, and that case is more nearly analogous to the case at bar. Allen v. Miller seems to rest upon the effect of making objection to the jurisdiction at the first opportunity. The present ease is one where the defendants did not make objection to the jurisdiction at the first opportunity; but they appeared first and objected afterward. "We do not perceive that Allen v. Miller is an authority against the position we are seeking to maintain.
*330 It will be borne in mind that we are not dealing with a case where the lower court had not jurisdiction of the subject-matter of the action, though, even in such case, if it be one where the appellate court would have original jurisdiction, and the party defeated below appeals to it and there appears, without objection pleads to the mei'its, and enters upon a trial, he can not afterward be heard to question the court’s jurisdiction of the subject-matter of the action. Harrington v. Heath, 15 Ohio, 483; Bisher v. Richards, 9 Ohio St. 495; Wood v. O'Ferrall, 19 Ohio St. 427, and Thomas v. Pennrich, 28 Ohio St. 55. See also an important holding in Adams Ex. Co. v. St. John, 17 Ohio St. 641. A fortiori, if the question is one simply as to the' person. And how, in principle, does such a case differ from one where the appellate court has rightful jurisdiction of the subject-matter by an appeal?
But why did not the appeal itself by these plaintiffs in error give the appellate court jurisdiction of their persons ? They were not required to appeal. Had they desired to challenge the ruling of the common pleas upon their answer to the jurisdiction, and present the question so made to this court, they should have forborne an appeal, and proceeded by petition iii error. The process is a simple one, and the remedy, if they had been wronged, would have been ample. By appealing they voluntarily took the case to the district court, and asked that court to try the case and adjudicate their rights, not upon questions of law alone, but upon all the facts and upon all the issues in the case. "Why was this not, as to their persons, a voluntary appearance in that court, and how can they now say that that court could not do precisely what they asked it to do for want of jurisdiction of their persons? How can they be permitted to speculate on the chance of a favorable judgment, and then turn around and deny the jurisdiction as to their persons of the tribunal to which they have appealed and thus submitted their persons ? Why should they be allowed to resort to that court, have their appeal docketed, compel all the other parties to follow the case there, and *331 then say to the court, we did not mean any thing; we were notin earnest about this; we are not in court, and you have no jurisdiction over us? See language of Read, J., in Harrington v. Heath, supra, p. 488; of Sutliff, J., in Bartges v. O’Neil, 18 Ohio St. 75; of Gholson, J., in Bisher v. Richards, supra, p. 498, and of Brinkerhoof, J., in Wood v. O’Ferrall, supra, p. 430.
It is unneecessary to consider whether, at the outset, the common pleas had or had not jurisdiction. The jurisdiction of the district court can not be successfully questioned.
Second. The complaint under this head is that S. A. Fuller, a stockholder, was not a party at the time the case was heard before the referee of the district court, nor ■when the decree under review was entered. Also, that the administrator of George B. Senter, a deceased stockholder, was not in court at the same time, and that Blossom, the assignor of Fuller’s stock, was exonerated, and thereby the other stockholders were prejudiced.
As to the alleged error by reason of delay in making new parties. Should the plaintiffs in error now be heard to make this complaint? The case was ordered, by consent, to a referee in the common pleas, was by him heard and reported upon, and atrial and judgment and appeal followed, aud yet no such objection was interposed. Again, at March term, 1881, of the district court, by consent of all parties, the case was referred to the gentleman who heard it as referee. The court’s attention was not called to any defect of parties, although the record shows that the plaintiff in error, Blossom, and his attorneys, who also represented all defendants who objected before the referee and in the district court, and are now making complaint under this head, “knew the facts disclosed by Blossom’s answer as to Fuller’s connection with Blossom in regard to the stock, aud the record showed that Fuller had not been brought in. Blossom was a creditor of the corporation, as well as a stockholder, and with all other creditors had just as full right as had the plaintiff to bring Fuller in, and, if not content with the vigilance being exercised by plaint *332 iff, it was Ms duty then to inform the court of the condition of the record. The action was being prosecuted no more for the interest of the plaintiff than for that of every other ei-editor, except that the amount due plaintiff may have been larger than the amounts claimed by some of the others. Still another term of the district court intervened (March term, 1882) before the hearing to the referee commenced, and yet no sign was made to the court that other persons were necessary parties in the case. Not until the lapse of twenty-two months after the reference, and just as the parties had gathered for trial under an order of reference, consented to by these plaintiffs in error, did they make objection to further proceedings until other parties should be made defendants. This tardiness, apparently deliberate, is suggestive, at least, and the parties who were so slow to object when the absent ones could have been brought in without delaying the case, can not now well ask special consideration at the hands of the court. Unless it be made quite clearly to appear that .they have been prejudiced in some substantial manner, a reviewing court will hardly give willing ear to their complaints, and interfere with the action of the trial court in the premises. We are nothin a case like this, inclined to search for unsubstantial and unimportant errors.
But, should this view be waived, does the record, upon the whole ground, here being considered, show even technical error? It is urged that Blossom had the right to demand that Fuller, his assignee, should be present as a party, so that on that trial all his rights as respects Fuller and all of Fuller’s rights might be then and there finally adjudicated for the very purpose of avoiding further litigation, for Fuller stands in the relation of indemnitor to Blossom; that no judgment was rendered against Blossom and he is out of the case; so that, if Fuller shall not be held, those shares of stock assigned escape assessment altogether, and that the action of the court in this regard was prejudicial to the rights of Blossom and of all creditors, *333 and was error. But is Blossom out? The assumption is that as no judgment was rendered against Blossom it was equivalent to a judgment in his favor, and that, as the journal entry is so drawn as to order a continuance as to Fuller and the Senter estate, and does not, in terms, order the case continued as to Blossom, he is necessarily out of court. With deference to the learned counsel, we can not concur in this assumption. If the case was continued at all it was, without question, continued as to Blossom in his relation of creditor. He therefore remained in for one purpose; why not for all other purposes of the case not before accomplished ? No finding having been had or judgment rendered for or against him on the claim of plaintiff, the issue, as to him, was undetermined. Unless the defendants (stockholders) were jointly liable, so that a judgment against some would work a release as to the others, the judgment was not a final judgment as to Blossom in either relation ; and if that be so the court’s jurisdiction over him is not lost, for where jurisdiction is once acquired, unless the action be ended by the parties, the jurisdiction continues until final judgment in the case. Bolles v. Stockman, 42 Ohio St. 445. We know of no principle upon which it can be claimed that where the stock is held in severalty the statutory liability of stockholders to the creditors of the corporation is joint, nor of any practice that would warrant the rendition of a joint judgment. On the contrary, the case cited by counsel (Umsted v. Buskirk, 17 Ohio St. 113) is authority, were authority needed, to the effect that the judgments to be rendered are several, although the suit is prosecuted for the common and equal benefit of all the creditors, We conclude, therefore, that the district court’s jurisdiction over Blossom was as unquestionable after the time at which judgments were rendered against his co-defendants as before. If error is to be discovered it must be found with reference to some other feature of the case.
It was proper, under section 5006, Revised Statutes, to bring in Fuller and Senter’s administrator de bonis non, in *334 order to a full determination of all the questions involved. But, under section 5013, Revised Statutes, in a case where no equities between stockholders were to be adjusted, why might not the court determine the controversy before it without prejudice either to the rights of those already in court, or of those yet to be brought in 1 The judgments rendered and to be rendered being several, if each stockholder liable at all was liable to the full amount of his stock, no reason is perceived why, by vh’tue of section 5311, Revised Statutes, the court had not full power to render judgment against one or more defendants, leaving the action to proceed against the others. Not only is this right given by statute, but it is well recognized practice in chancery cases. See Dougherty v. Walters, 1 Ohio St. 201.
This view is not in conflict with the cases of Umsted v. Buskirk, supra; Wheeler v. Faurot, 37 Ohio St. 26, and Bullock v. Kilgour, 39 Ohio St. 543, cited by counsel, when those cases are properly considered. It will be noticed that in Bullock v. Kilgour a judgment had been rendered against one of the defendants in 1870, for an amount certain, as being the extent of his statutory liability. In March, 1882, the plaintiff, by supplemental petition, sought to recover an additional amount upon a liability which existed when the first judgment was rendered, and the trial court gave judgment as prayed. This court held the first judgment to be a final judgment, and that the issue was res judicata between the parties. In the case at bar no judgment of any kind as to Blossom had been rendered. In Wheeler v. Faurot two defendants (stockholders) set up by answer that they had sold their stock to solvent purchasers amenable to process, and prayed that they might be made parties and brought in by summons. This the trial court refused to do. This court, recognizing the doctrine of Umsted v. Buskirk, to the effect that for the purposes of general account among the stockholders, and to enforce from them contribution in proportion to their shares of stock, and to a complete determination of all the equities involved, the other stockholders should be brought in, and that any de *335 fendant had the right to insist upon their being made parties, held that the action of the trial court was erroneous, and reversed it. Here the district court did not refuse to have remaining stockholders brought in ; on the contrary, it made an order to that effect. But there was no necessity that the case should be delayed on that account, for, as to all affected by the judgment, there was not, nor could there be, accounting or contribution between the • stockholders, and the cases'above cited are very far from being authority in support of the claim that, where such a condition of the case appears,the court’s hands are tied, and it can do nothing until every solvent stockholder living and within the jurisdiction, and the representative of every one deceased, is brought in. The position would be different if it were necessary to order contribution, an adjustment of equities, and an equalization of burdens among stockholders. But that necessity, we have found, does not exist here. The liability of no stockholder against whom a judgment was rendered could possibly be increased or diminished by the disposition of the issues to be determined later. • The debts of the corporation, as found by both referees, and not disputed, far exceeded the capital stock; so that, in any possible event, every stockholder that could be holden at all was liable for an amount equal to his stock. Nor can the creditors complain. They could as well shane in the proceeds of judgments rendered against Blossom or Fuller, and the Senter estate, at a subsequent term, as though the amounts had been earlier ascertained; at most, delay could not aid them. We see nothing in the way of the district court, when issues should be made between Blossom and Fuller, adjudicating between them, and if it be found that Fuller is not liable, proceed to adjudicate as between Blossom and the creditors. Should Fuller not be held liable on final trial no prejudice would accrue to Blossom which could have been cured by a delay of the whole case; and as to effects of delay generally, as already found, he was as much responsible as any other party.
What might be regarded as proper practice under section *336 3260, Revised Statutes, we are not called upon to determine. That section having been enacted since the commencement of this suit, would not, under section 79, Revised Statutes, apply in this case. The plaintiffs in error were not prejudiced by the omission to render judgment against Blossom, nor by the refusal of the district court to delay, nor did the absence of Fuller, or Senter’s representative, deprive the court of jurisdiction.
Third. It was held by the district court that interest should be charged against the stockholders as of the date of the commencement of suit. The contention on part of plaintiffs in error is that in no case can the stockholder be liable for a sum beyond the amount of his stock, to be determined at the time the liability is finally fixed by judicial decree. In other words, that the liability is one created by statutory enactment under the constitution, to be enforced by decree, and interest can not be added except by virtue of the decree of the court declaring the liability, and no interest can accrue against the stockholder until the liability is thus declared. On the other hand, the claim is that, while the liability is created by the constitution and the statute, yet the stockholder places himself under liability by contract when he subscribes for or acquires the stock; and, resting as'well upon contract as upon statute, the interest follows the maturing of the obligation, which is at the time when the corporation becomes insolvent and refuses to pay.
We agree with the counsel that the question is one which, upon principle, is of very considerable difficulty. But we do not feel disposed to enter upon a discussion of it here, inasmuch as it was involved in the case of Wehrman v. Reakirt, decided in the superior court of Cincinnati in 1871, 1 C. S. C. R. 230, by Judge Taft, in a well considered opinion. It is stated by Judge Hagans, of that court, in Hooker v. Kilgour, 2 C. S. C. R. 350, that the case was brought to this court on motion for leave to file petition in error, which was refused. The district court, in holding the stockholders for interest after the commencement of the *337 suit, evidently followed the law of that case, and, inasmuch, as it has been generally acquiesced in as furnishing the true rule, we are not prepared to say it is not the law in this state. The necessities of the case do not require us to go farther. Support for the proposition advanced by counsel for defendant in error will be found in the cases of Corning v. McCullough, Comstock, 58; Burr v. Wilcox, 22 N. Y. 551; Baker v. Bank, 9 Metcalf (Mass.), 182, and Terry v. Anderson, 95 U. S. 628.
Fourth. As to the allowance of attorney’s fees: It is urged that there was no power in the court to make any allowance at all. The proceeding was in equity. Its purpose was to bring into court a fund for distribution among creditors. Quoting from the brief of counsel for plaintiff in error: “ The action is for the equal benefit of all the creditors. No one creditor can ever obtain any advantage or preference over the remaining creditors. All are to share in the fund recovered from the stockholders pro rata.” The labor of the plaintiff’s counsel being, therefore, for the equal benefit of all the creditors, why should the whole expense of attorney’s fees be borne by the plaintiff? Should the other creditors, sitting by and observing counsel do work which inured as much to their benefit as to that of plaintiff, be heard to say that in good faith and fairness they should not contribute to a reasonable recompense? Indeed, there is much reason for the claim that the circumstances raise a presumption of a promise to pay on their part. But, however that may be, the court, in the exercise of its power over the fund, and in the discretion of doing full and exact justice to all the parties, had ample power to order paid from the fund reasonable counsel fees, the same as power to order payment of costs. It is'insisted that such allowance is unfair to the other creditors, inasmuch as they were required to pay counsel for like services. Doubtless they were required, so far as they answered, to employ counsel for that purpose. Beyoud this it is not perceived that any labor in the interest of creditors was performed by counsel other *338 than those representing plaintiff. It happens that many stockholders were likewise creditors, and the same counsel appeared for them in both capacities. The proceedings bristle with evidences of their efforts in defense of the stockholders, but traces of their labors in behalf of creditors, as such, have some way been omitted from the printed record. We see no hardship. As to the amount of such allowance the trial court was in better position to judge what sum would be reasonable than is this court, and as no showing is made that the amount allowed was excessive, this court does not feel called upon to reduce it.
Fifth. As to Homer C. Nellis: This defendant disposed of his stock to parties who were insolvent, or beyond the jurisdiction. During the time he held it certain debts accrued against the corporation, and upon this showing a judgment was rendered against him for his proportion of the same. To hold this to be erroneous would require a review of the judgment of this court in Brown v. Hitchcock, 36 Ohio St. 667, a responsibility which we arc not prepared at this time to assume. And discussion of the question is unnecessary.
Upon the whole case we are disposed to look at the alleged errors presented as technical, at best, and not substantial. And we are the more reluctant to disturb a judgment of this character because of the well known difficulty which surrounds the enforcement of the constitutional liability of stockholders for the debts of corporations. By reason of the great number of stockholders, the frequent transfers of stock, the decease of parties, and of other causes, delays — vexatious, expensive and almost interminable — seem to be inevitable in all such proceedings; so much so, indeed, that such liability has grown to be looked upon as furnishing next to no security at all for the debts of corporations. The present case well illustrates it. Commenced in January, 1877, it was not until March, 1888, that a judgment available to the creditor was reached.

Judgment affirmed.