WORRALL and others *vs.* JUDSON.

J. was one of the original stockholders of the Rossie Galena Company, and at the time of contracting a debt to the plaintiffs, by the company, there had been no transfer, on its books, of the stock which had been owned by J., although he had, in fact, sold it, and had transferred his certificate of stock, with his name endorsed upon it in blank; *Held* that J. was liable to the plaintiffs as a stockholder, under the act of incorporation of the company.

THIS was an action of assumpsit brought against the defendant as a stockholder of the Rossie Galena Company, to recover from him the amount of a judgment against the company, in favor of the plaintiffs, for goods sold and delivered to the company while the defendant was a stockholder. The jury found a special verdict, stating, among other things, that at the organization of the Rossie Galena Company, the defendant was the owner of twenty shares of the stock of the company, which stood in his name upon the books of the company, and he continued to be such owner until the 10th of May, 1838, when, for a valuable consideration to him paid by Paschal Miller, he sold the same to him, and transferred and assigned them to him by

delivering to said Miller the certificates therefor with the defendant's name endorsed thereon in blank. But said shares of stock continued to stand on the books of the company in the name of the defendant, and none of them were transferred thereon, to said Miller, or any other person, until after the sale and delivery of the goods by the plaintiffs to the company; that some of said shares still stood on the books of the company in the name of the defendant; and that the sale of his stock, by the defendant, was known to the officers and managing agent of the company soon after it took place.

*A. C. Bradley,* for the plaintiffs, moved for judgment in their favor, upon the special verdict.

*H. E. Davies,* for the defendant.

*By the Court,* EDWARDS, J. It appears by the special verdict in this case, that the defendant was one of the original stockholders of the Rossie Galena Company, and that at the time the goods, to recover the price of which this suit is brought, were sold to the company, there had been no transfer on its books of the stock which had been owned by him; although he had, in fact, sold it, and had transferred his certificate of stock, with his name endorsed upon it in blank. Upon this state of facts the question arises, whether he is liable as a stockholder, under the act of incorporation of the company.

It seems to me that, according to the decisions which have been made in this state, this can no longer be considered an open question. In the case of the *Utica Bank* v. *Smalley*, (2 *Cowen,* 770,) and of *Gilbert* v. *Manchester Iron Manufacturing Co.* (11 *Wend.* 627,) it was held that a stockholder in an incorporated company might transfer his stock in such a manner as to qualify himself as a witness, without showing a transfer on the books of the company; but the court did not pretend, in either of these cases, to decide what would be the extent of the liability of a person whose name stood upon the books of the company as a stockholder, after such transfer of

Worrall v. Judson.

his stock had been made. In the case last cited, they say that the rules, and by-laws, which require a transfer to be made on the books, have reference to the right of voting, or to the security of the company by way of lien upon the stock for any indebtedness of the stockholder, and do not incapacitate him from parting with his interest. They thus decide, by implication at least, that unless a transfer is made, as required by the act of incorporation, or by-laws of the company, a person whose name stands on its books will be entitled to vote, and will be liable for any amount which shall be due to the company upon the stock standing in his name.

The 9th section of the act incorporating the Rossie Galena Company declares that the stockholders of the corporation shall be jointly and severally personally liable for the payment of the debts contracted by the corporation. The 6th section declares that the stock shall be transferable on the books of the company. And the 8th section declares that the company shall be subject to the prohibitions and restrictions contained in title four, of chapter eighteen of the first part of the revised statutes. (*Laws of* 1837, *p.* 445. 1 *R. S.* 604, 1*st ed.*) By section eight of that title the right to vote on the stock of an incorporated company is confined to those persons whose names shall appear, on the transfer books of the company, to have the right to vote thereon. The person whose name appears as a stockholder, upon the transfer books, is, in respect to the right of voting at least, entitled to the privileges of a stockholder, although he may have sold his stock. Before a transfer on the books, the legal title is in him; and as he is entitled to the privileges, he should be subjected to the liabilities, of a stockholder.

The section in the act of incorporation of the company, which provides for the individual liability of its members, as was held in the case of *Allen* v. *Sewall,* (2 *Wendell,* 327,) and also in the case of *Moss* v. *Oakley,* (2 *Hill,* 265,) was intended to put the stockholders of the company upon the same footing, as to liability, as if they had not been incorporated. The parties then who ought to be held liable, are those who hold themselves out as stockholders.

It was said, however, upon the argument, that if this were the case, it would place it in the power of the company to prevent a person from relieving himself from liability for its debts, by its refusal to make a transfer upon its books. It is not to be taken for granted that a company would wilfully be guilty of such an abuse of its power. And if it should do so, this court would undoubtedly grant the adequate relief. But if, on the other hand, a party should be permitted to transfer his stock by a mere assignment *inter partes*, and thus discharge himself from liability for the debts of the company, and still be permitted to keep his name on its books as a stockholder, with the right to vote at its elections, it might be that the whole control of the company would be in the hands of persons not responsible for its debts. It seems to me that the case of *Adderly* v. *Storm*, (6 *Hill*, 627,) which is substantially analogous to this case, has settled the rule upon this subject.

In that case the stock of the Rossie Lead Mining Company had been transferred upon its books to the defendants, to secure a debt due to them. The debt was afterwards paid, and according to the agreement between the parties, the original stockholder was entitled to a retransfer of the stock. The parties, to secure whose debt the transfer had been made, returned the certificate of stock, and executed a power of attorney authorizing such retransfer. After the return of the certificate and execution of the power of attorney, but before a transfer was made upon the books of the company, it contracted the debt for the recovery of which the suit was brought. The court held that the persons whose names appeared on the books of the company as stockholders, were liable for its debts, although they had assigned their stock; that by the delivery of the certificate and the execution of the power of attorney the defendants only gave a power to transfer; and until the transfer was actually made they continued to be the legal stockholders.

In the case before us, as appears from the special verdict, the defendant, instead of giving a power of attorney, had done what was equivalent to it; he had endorsed his name on the certificate of stock which he had transferred, by which, accord-

ing to the decision in *Kortright* v. *Buffalo Commercial Bank*, (20 *Wend*. 91,) he gave the purchaser of the stock authority to write a power of attorney over his signature. The two cases, then, are in substance, precisely similar.

It follows that the plaintiffs are entitled to judgment for the amount claimed.

---

SAME TERM. *Before the same Justices.*