(Decided 8th March, 1876.)

---

JOHN W. MAGRUDER, Receiver of the MERCHANTS' NATIONAL BANK OF WASHINGTON *vs.* FREDERICK COLSTON and others, trading as COLSTON, ARCHER & Co.

*National Banking Act—Individual liability of a Stockholder, holding as Pledgee—When a Sale of Stock by the Pledgee will not be held as having been made in Fraud of the Creditors of the Bank.*

Persons who hold stock in pledge, the certificates of which stand on the books of the bank in the name of the pledgee, are, in the contemplation of the National Banking Act, stockholders, and so long as they thus hold the stock in pledge, are responsible to the creditors of the bank in proportion to the amount so held.

But a sale of the stock under an authority conferred by the terms of the pledge, is not obnoxious to the charge of having been done in fraud of creditors, although its leading object and purpose may have been on the part of the pledgee to avoid liability as a stockholder, under the twelfth section of the National Banking Act.

APPEAL from the Superior Court of Baltimore City.

The facts of the case are sufficiently stated in the opinion of the Court.

*Exception.*—The plaintiff offered at the trial below ten prayers, the third and fourth of which only are noticed by this Court, and are as follows :

3. If the jury shall find from the evidence that the defendants were shareholders of the stock of the Merchants' National Bank, and that on the 2nd of May, 1866, they transferred their stock to Josiah Colston, having information at the time of said transfer that the bank was insolvent, and that they transferred said stock for the nominal consideration of $1, and that said transferee was a man of little or no means and not pecuniarily responsible, and known to be so to the defendants, and that said transfer was made with a view and for the purpose of evading or escaping their responsibility under the 12th section of the National Banking law, such transfer constitutes no defence to this action and will have no effect to relieve them from the responsibility which would have attached to them in case said transfer had not been made.

4. If the jury shall find that the defendants were shareholders of the stock of the Merchants' National Bank, and that the legal title of said stock was in their name on the books of the bank, and the fact that they sold said stock under an agreement with Bayne & Co. as pledgees to secure a loan of money, nevertheless the defendants are responsible in law to the plaintiff in this action to the same extent as if they sold the legal title to said stock absolutely and not as pledgees for the security of said loan.

And the defendants offered three prayers, of which the second only as follows, was noticed by this Court:

2. That if the jury find from the evidence that the defendants received the 50 shares of stock mentioned in the evidence as collateral security in part for the payment of a loan made by them to Bayne & Co., and that they had no right to, or interest in, said stock, except as collateral security for said loan ; and if they shall further find that by the terms of the contract between Bayne & Co., and the defendants, the defendants had the right to sell, and transfer said stock whenever the said Bayne & Co. should fail, on demand, to return said loan, and that the defendants called on Bayne & Co. to repay said loan, and that Bayne & Co. failed to do so, and that the defendants thereupon sold said stock to Josiah Colston, and transferred the certificate thereof to him on the 2nd of May, 1866, as shown in evidence, then the plaintiff is not entitled to recover in this action, even if the jury shall find that at the time said sale and transfer were made, the defendants were aware that the said bank was in failing circumstances, and that the defendants made said sale and transfer with the intent to avoid loss by retaining said stock, and shall also find that said bank actually ceased to do business, and failed on the third day of May, 1866.

The Court (DOBBIN, J.,) refused the foregoing prayers of the plaintiff, and granted that of the defendants. The plaintiff excepted. The jury rendered a verdict for the defendants, and judgment was entered accordingly. The plaintiff appealed.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER, ALVEY and ROBINSON, J.

*William M. Merrick,* for the appellant.

The third and fourth prayers of the plaintiff, and the second of the defendant raise the question whether a holder

of stock, knowing a bank to be insolvent, for the purpose of escaping his responsiblity to the creditors of the bank, can lawfully transfer his stock for nominal consideration to a man of straw, and thereby rid himself effectually of his obligation to contribute an amount equal to the value of his stock to satisfy the debts of the bank under the 12th section of the Banking Law.

The appellant maintains that he cannot; that fraud vitiates everything, as well an assignment of stock as any other act intended to prejudice the rights of innocent parties. *Marcy vs. Clark*, 17 *Mass.*, 334; *Holyoke Bank vs. Burnham, et al.*, 11 *Cushing*, 183 to 186; *Roman vs. Fry*, 5 *J. J. Marshall*, 634; *Moss vs. Oakley*, 2 *Hill*, 270; *Adderly vs. Storm*, 6 *Hill*, 624 to 628; *Hale vs. Walker*, 31 *Iowa*, 344, 354; *Matter of the Empire City Bank*, 18 *New York*, 223; *Rosevelt vs. Brown*, 1 *Kernan*, 148; *Onslow vs. Corrie*, 2 *Maddock*, 340; *Ex parte De Pass*, 5 *Jurist, New Series*, 1193, 1194; *Angel & Ames on Corporations*, sec. 623; *Crease, et al. vs. Babcock, et al.*, 10 *Metcalf*, 547.

*Charles Marshall*, for the appellees.

The holders of stock like that of a National Bank, to the holding of which personal liability attaches in the event of the bank's insolvency, have the right to sell and transfer the same *if they obtained and held the stock under a contract which gave them that right, and the right is not taken away by the fact that the bank afterwards becomes embarrassed*, as long as the bank continues to do business and transfer stock. Apart from express authority, this proposition would seem to be plain enough on principle. The pledgee of such stock has rights which proceed from his contract with the pledgor, made without reference to anything but the value of the pledge as a security. Those rights cannot be taken away from him as long as the legal power to sell and transfer the stock remains. The pledgee is not bound by his contract to retain a bad security for his debt.

Magruder, &c. *vs.* Colston, *et al.*

The contract in this case was one by the terms of which the defendants were entitled to sell upon the non-payment of the debt for which they held it in pledge. This right was secured by contract in which the creditors of the bank had no interest, and which gave the defendants vested and absolute rights.

They sold the stock absolutely, and effected the transfer of it while the bank was yet transacting business. An actual sale made under such circumstances by a pledgee, followed by a transfer of the stock is one that he is competent to make under the contract of bailment.

There can be no doubt that an assignee of a lease may terminate his liability by assigning to a bankrupt, and one of the cases cited shows that if the party be an executor, the Court will hold him personally responsible for the loss if he holds on to an unprofitable term. The liability is strictly a legal one, and unless it be shown to exist under the statute, it is not to be implied. *Utley & Godfrey vs. Union Tool Company,* 11 *Gray,* 139. It arises under sec. 12, of the Act of 1864, June 3rd, ch. 106. See also sec. 63 of same Act.

The holder of stock as collateral security is not a shareholder in the sense of the 16th section. *Merchants' Bank vs. Cook,* 4 *Pick.,* 410.

But after the transfer by the defendants in pursuance of the contract under which they got the stock as collateral, there can be no charge of *mala fides,* and the liability, if any ever existed, ceased. *Holyoke Bank vs. Burnham,* 11 *Cush.,* 186; *Ex parte De Pass,* 5 *Jurist, N. S., part* 1, 1193; *Rosevelt vs. Brown,* 1 *Kernan,* 152; *Rowley vs. Adams,* 4 *Myl. & Cr.,* 534; *Onslow vs. Corrie,* 2 *Maddock,* 340; *Woolveridge vs. Steward,* 1 *Cr. & M.,* 644.

GRASON, J., delivered the opinion of the Court.

The questions presented by some of the prayers, as to the organization of the Merchants' National Bank of

Washington, having been abandoned by the counsel of the appellant, the only questions before the Court upon this appeal arise upon his third and fourth prayers, which were rejected by the Court below, and the appellee's second prayer which was granted. The record shows that, some time before the failure of the bank, the appellees, who were bankers and brokers in Baltimore City, lent to Bayne & Company eight thousand dollars, payable on call, and took from them as collateral security for repayment of the loan, one hundred shares of the stock of the Merchants' National Bank of Washington, fifty shares of which were in a certificate standing in the name of Oscar A. King, and endorsed in blank by him, and the remaining fifty shares in a certificate standing in the name of Bayne and Company, and endorsed in blank by them. The appellees held these two certificates until the 26th of April, 1866, when, having previously called upon Bayne & Co. for repayment of the loan, and they having made default and instructed the appellees to sell, the latter requested the bank to transfer the stock to them and to issue certificates to them in their own name for it. The bank transferred the fifty shares standing in King's name and issued the certificates therefor to the appellees, but refused to transfer the fifty shares standing in the name of Bayne & Co., because Bayne & Co. were indebted to the bank. The appellees sold the whole of the stock to Colston on the second day of May, 1866, for one dollar, and delivered to him the certificate for the fifty shares originally standing in the name of King, as well as the certificate standing in the name of Bayne & Co., and the bank thereupon issued a new certificate to Colston in his own name for the fifty shares originally standing in King's name, and delivered it to him on the second day of May, the day before the bank failed, and while it was still open and doing business. The appellees proved that at the time of the sale they did not consider the stock worth anything, and

that they intended, when they made the sale to Colston to avoid complications and difficulties, fearing that the bank, which they had heard was in difficulties, might prove insolvent. They further proved that Colston was not pecuniarily responsible for the amount of the par value of the stock so sold and transferred to him. The bank closed its doors on the 3rd day of May, at 3 o'clock P. M., and turned out to be insolvent, and this suit was brought by the Receiver to recover from the appellees, as stockholders of the bank, the par value of the fifty shares of stock, the certificate of which had been issued to them, and by them transferred to Colston. Upon these facts the appellant's third and fourth prayers asked instructions that if the jury should find that the transfer of the fifty shares of stock was made by the appellees to Colston with a view and for the purpose of evading, or escaping their responsibility under the twelfth section of the National Banking Act, such transfer constituted no defence to this action, and did not relieve the appellees from the responsibility which would have attached to them in case the transfer had not been made, and that, if they had so sold the stock under their agreement with Bayne & Co. as a pledge to secure a loan of money, they were still responsible in law to the same extent as if they had been the absolute owners and had sold the legal title to the stock. The appellees' second prayer contained the converse of these propositions.

The 12th section of the National Banking Act provides for the personal liability of stockholders of national banks for the debts of the corporation, in proportion to the amount of stock held by them, and enacts that every person, becoming a shareholder by transfer, shall succeed to all the rights and liabilities of the prior holder of such shares. After a careful examination of the authorities, cited in the argument, we are of opinion that persons, who hold stock in pledge, the certificates of which stand on the books of the

bank in the name of the pledgee, are, in contemplation of the Banking Act, stockholders, and, so long as they thus hold the stock in pledge, are responsible to the creditors of the bank in proportion to the amount so held. The reason for this is obvious. The stock stands on the books of the bank in his name and he is thus held out to the public as shareholder, and persons dealing with the bank, have no means of knowing the nature of the contract under which he holds the stock, and have a right to presume, and are led to believe that he is the absolute owner of it, and it is but fair to presume that they deal with the bank upon the faith and credit of parties thus appearing as stockholders. Stockholders are those who appear on the books of the bank as owners of shares, and who are entitled to manage its affairs, and they can only throw off the liabilities, incident to that relation, by transferring the stock. Until this is done they continue to be stockholders within the meaning of the Banking Act. If we depart from the terms of the law and inquire into the equities which may exist between the stockholders and third persons, it cannot fail to embarrass creditors in seeking a remedy for the wrongs which may have been done by the corporation. If creditors must look beyond the legal title, as exhibited by the books of the bank, they can never know against whom to proceed. *Rosevelt vs. Brown*, 1 *Kern.*, 153; *Addenly vs. Storm*, 6 *Hill*, 624; *Worrall vs. Judson*, 5 *Barb.*, 210; *Crease, et al. vs. Babcock, et al.*, 10 *Metcalf*, 545; *United States Trust Co. of New York, Receiver, vs. The United States Fire Ins. Co.*, 18 *New York Reps.*, 224; *Holyoke Bank vs. Burnham, et al.*, 11 *Cush.*, 187. These cases arose under State laws making stockholders in corporations personally liable for the debts of the corporation, but the principles announced in them are applicable to cases arising under the Act of Congress of 1864, chap. 106. That Act makes stockholders only personally liable, and the appellees had parted with their stock when the bank failed, and had therefore ceased to be stockholders.

But it was contended by the counsel of the appellant, that inasmuch as the assignment and transfer of the stock was made to Colston, under the circumstances detailed in the proof, and for a nominal consideration, and with the view and purpose of avoiding any complications and difficulties in which a failure of the bank might involve them, the transfer was a fraud upon the creditors of the bank, and the appellees ought, therefore, to be held to the same liability to which they would have been subjected, had they never made the transfer. It must be recollected, however, that they had no right under their contract with Bayne & Co., to hold the stock as their own property, but had to sell it after the default of the latter in repaying the loan. The only case that bears directly upon this question to which we have been referred, or which we have been able to find, is that of the *Holyoke Bank vs. Burnham*, reported in 11 *Cush.*, 187. In that case Joseph Burnham transferred certain shares of stock of a manufacturing company to Charles Burnham, who gave his note to Joseph for eight hundred dollars, and the agreement between the parties, provided that any time within two years, either party should have the right to rescind the sale by a re-transfer of the shares and a surrender of the note. Within the two years the sale was rescinded by Joseph surrendering the note, and Charles re-transferring the shares. Suit was brought against Charles, as shareholder of the corporation, by one of its creditors under the personal liability Act of the Legislature of Massachusetts, and it was held, that as the shares of stock had been re-transferred under a stipulation, which formed part of the original contract between the parties, Charles Burnham was not liable, notwithstanding the re-transfer had been made for the purpose of avoiding liability under the Act. The case was heard by five of the six judges of the Supreme Court of Massachusetts, and Judge DEWY, in delivering the opinion of the Court says,

"as to the second question, the right of the defendant to re-transfer to Joseph Burnham the eleven shares, and thus divest himself of subsequent liability arising from his holding stock, the contract between the parties made at the time of the transfer, authorizing such re-transfer at the election of the parties at any time within two years, becomes material, and we are of opinion that, under the agreement made at the time of the transfer, and the re-transfer being only an act in execution of it, it is not obnoxious to the charge of having been done in fraud of creditors, although its leading object and purpose might have been, on the part of the defendant, to avoid liability as a member of said corporation. * * * It is unnecessary to consider, therefore, the general question how far persons owning shares in a manufacturing company, may, by transferring them to some third person, with a view to avoid liability as such owner, to the creditor, effectually do so in the absence of such original contract for a re-transfer."

In this case, it was part of the original contract between Bayne & Co. and the appellees, that the latter should sell the stock upon the failure of the former to repay the loan upon call, and the sale to Colston was only in execution of it. These facts are very similar to those in the case of the *Holyoke Bank vs. Burnham,* and the justice and reason of the principle applied in that case commend themselves to our approval, and we think it ought to be applied to this, and so applying it we find no error in the rulings of the Court below.

*Judgment affirmed.*

(Decided 8th March, 1876.)