THE MOLSON'S BANK, PLAINTIFF, *v.* DOUGLASS BOARD-MAN, AS EXECUTOR, ETC., OF JOHN McGRAW, DECEASED, DEFENDANT.

*The liability of a stockholder of an insolvent corporation, created by the provincial parliament of Quebec, to its creditors is to be determined by the laws of that province — when the evidence of lawyers of that province, as to their opinion of what construction should be given to the statutes of that province, is inadmissible — the statutes of the Province of Quebec regulating the liabilities of a stockholder, considered and held not to make a person, at whose request another party has taken shares in his own name, liable as a stockholder.*

The plaintiff, after obtaining, in July, 1883, a judgment against the St. Maurice Lumber and Land Company for $126,645.55, and issuing an execution thereon, which was returned unsatisfied, presented a claim against the defendant, as executor of the estate of John McGraw, on the ground that the testator owned $100,000 of the stock of the said company, upon which had been paid only $33,333.33. Upon a trial had before a referee, to whom the claim had been referred, it appeared that in July, 1867, William Stoddard and five other persons purchased a saw-mill and timber property at Three Rivers, in the Province of Quebec, at the agreed price of $200,000, of which only $80,000 was paid down, the title being taken in the name of Stoddard, who gave his notes for the balance of the purchase-price. In April, 1869, the provincial parliament of Quebec, on the application of the persons so interested in said property and business, passed a special act incorporating the St. Maurice Lumber and Land Company, naming such persons as provisional directors, and providing that they "or such of them, and all other persons, as shall become shareholders in said company, shall be a body corporate under the title of the St. Maurice Lumber and Land Company." On the 27th of June, 1870, the persons then interested in the property being the

persons named in the act, except one Smith, whose interest in the property had been purchased on September 23, 1869, by John and Thomas McGraw, met in Quebec and perfected the organization of such company under the act. Stoddard, at the request of the McGraws, included with his subscription of $100,000. representing his one-sixth interest in said property, another $100,000, which represented the one-sixth interest which then belonged to the McGraws, the subscription for their share of the stock being taken in the name of Stoddard at the request of the McGraws and for their benefit, their names not appearing upon the books of the company; an assessment upon the shareholders, imposed by the directors of the company, was paid by the McGraws for the shares so held by Stoddard for their benefit by giving the company credit for the amount thereof upon a debt which was owing by the company to them.

The plaintiff called as witnesses two advocates of the Province of Quebec, who testified to their knowledge and familiarity with the law of that province, and they, in effect, testified that a subscription for the stock of a corporation organized under an act like the St. Maurice act, and under the circumstances proven in this case, would be a subscription by the party for whom it was taken, and would make him a shareholder, and liable as such to a creditor of the company to an amount equal to the amount unpaid on such subscription. These opinions were based on provisions of the Civil Code of Lower Canada and two cases decided by the Canadian courts. The defendant called another advocate of experience and acquainted with and learned in the law of the Province of Quebec, who testified that, under the circumstances proven in this case, the person for whom the subscription was made would not become a shareholder of such corporation, and would not be liable under the general clauses act of that province. There was no proof given, nor was it claimed by either party, that the courts of the Province of Quebec had decided the question under consideration in this case or one identical with it.

Upon an appeal from a judgment, entered upon the report of the referee, who found that the McGraws were stockholders in the company, and as such became liable to its creditors to the amount of their unpaid stock:

*Held,* that the question of the defendant's liability upon the plaintiff's claim was governed by the laws of the Province of Quebec and not by the laws of this State.

That where the evidence of foreign law consists entirely of a written document, statute or judicial opinion, the question of its construction and effect is for the court alone, and the evidence of a lawyer of another State or county as to what, in the opinion of lawyers there, should be the construction of a statute of that State or country, is not admissible where the language of the statute is plain and there is no decision by the courts of that State or country upon the points in controversy.

After holding that the character and extent of the liability of a shareholder in such a company was defined by the general clauses act of the Province of Quebec, and examining the sections of the said act and of the special act incorporating the company, and the authorities bearing upon the question involved in this action, the court *held* that the referee erred in holding that the McGraws were shareholders or liable to the creditors of the St. Maurice Company.

APPEAL from an order confirming the report of a referee and from the judgment entered thereon in Tompkins county.

Both parties appealed. The reference was of a claim against the defendant as executor of the estate of John McGraw, deceased. It was under the statute relating to the reference of claims against the estates of deceased persons. The claim was for $66,666.66 alleged to be due the plaintiff from the estate of John McGraw, deceased, on the ground that the testator owned $100,000 of the stock of the St. Maurice Lumber and Land Company, upon which had been paid only $33,333.33, and that the plaintiff, a creditor of the company, had obtained a judgment against it for $126,645.55, upon which an execution had been issued and returned wholly unsatisfied; that by reason thereof the said estate was chargeable with the amount unpaid on said stock. The referee reported in favor of the plaintiff for §80,488.86, but allowed the defendant's set-off to the amount of $20,160.24 and held him liable for the sum of $60,328.62. The plaintiff appealed from so much of the order and judgment as allowed the set-off. The defendant appealed from the whole of both the order and judgment,

*H. J. Swift,* for the plaintiff.

*Countryman & Halliday,* for the defendant.

MARTIN, J. :

In July, 1867, William Stoddard, Samuel B. Smith and four others, purchased a saw-mill and timber property at Three Rivers, in the Province of Quebec. The agreed price for the property was $200,000, but only $80,000 was paid down. The title to this property was taken in the name of William Stoddard, who gave his notes for the balance of the purchase-price, which were made a lien on the land. Stoddard, in fact, owned only one-sixth of the property, Samuel B. Smith and the four others owning the remaining five-sixths. Smith owned one-sixth, which was evidenced by a writing from Stoddard to Smith. Stoddard, as the agent for the owners, carried on the business of manufacturing and selling lumber, under the name of the St. Maurice Lumber and Land Company.

In April, 1869, the provincial parliament of Quebec, on the application of the persons so interested in said property and business,

passed a special act incorporating the St. Maurice Lumber and Land Company, naming such persons as provisional directors and providing that they, " or such of them, and all other persons, as shall become shareholders in said company, shall be a body corporate under the title of the St. Maurice Lumber and Land Company." On the 23d day of September, 1869, John and Thomas McGraw, who were partners, purchased of Samuel B. Smith his interest in said property, and they succeeded to all his title thereto.

On the 27th day of June, 1870, the persons thus interested in said property and business, being the said John and Thomas McGraw and the persons named in said act, except Smith, to whose interest the McGraws had succeeded, met in the city of Quebec to perfect the organization of such company under that act. When the subscription for stock in the company was made, William Stoddard, at the request of the McGraws, included with his subscription of $100,000, representing his undivided one-sixth interest in said property, another $100,000 dollars, which represented the one-sixth interest which then belonged to the McGraws, thus making Stoddard's subscription $200,000. The subscription for their share of the stock was taken in the name of Stoddard, at the request of the McGraws and for their benefit. The names of the McGraws did not appear upon the books of the company as shareholders.

September 14, 1870, the directors of such company made a call or assessment upon the shareholders of the corporation for $200,000, and a notice of such assessment with a statement of the amount due upon the hundred thousand dollars of stock, subscribed for by said Stoddard for the benefit of the McGraws, was sent to them, and they, subsequently, with the consent of the company, paid such call or assessment by giving the company credit for that amount upon a debt which was owing by the company to them. The McGraws have never paid any other assessment or any other sum on such $100,000 of stock. Thomas McGraw subsequently died and John McGraw succeeded to his interest and assumed his liabilities, so far as matters here involved are concerned.

The plaintiff, in July, 1883, obtained a judgment against the St. Maurice Lumber and Land Company for $126,645.55. An execution thereon was issued and returned unsatisfied. The judgment was on a note given as the last of a series of renewal notes the first

of which became due in 1872. On the trial the act incorporating the St. Maurice Lumber and Land Company (32 Vict., chap. 65) and the joint-stock companies general clauses act (31 Vict., chap. 24) were introduced in evidence.

The plaintiff called as witnesses two advocates of the Province of Quebec, who testified to their knowledge and familiarity with the law of that province, and they in effect testified that in their opinion a subscription for the stock of a corporation organized under an act like the St. Maurice act and under the circumstances proven in this case would be a subscription by the party for whom it was taken, and that the party requesting such subscription to be made would be a shareholder, and liable as such to a creditor of the company to an amount equal to the amount unpaid on such subscription, although such subscription was made by and in the name of another person. These opinions were based on the following provisions of the Civil Code of Lower Canada: "Section 1716. A mandatary who acts in his own name is liable to the third party with whom he contracts, without prejudice to the rights of the latter against the mandator; also (1727.) the mandator is bound in favor of third persons for all the acts of his mandatary, done in execution and within the powers of the mandate, except in the case provided for in article 1738 of this title, and the cases wherein by agreement or the usage of trade the latter alone is bound. The mandator is also answerable for acts which exceed such power, if he have ratified them either expressly or tacitly. (1728.) The mandator or his legal representative is bound toward third persons for all acts of the mandatary, done in execution and within the powers of the mandate after it has been extinguished, if its extinction be not known to such third persons. (1729.) The mandator or his legal representatives is bound for acts of the mandatary done in execution and within the powers of the mandate after its extinction when such acts are a necessary consequence of a business already begun. He is also bound for acts of the mandatory done after the extinction of the mandate by death or cessation of authority in the mandator, for the completion of a business, where loss or injury might have been caused by delay. (1730.) The mandator is liable to third parties who in good faith contract with a person not his mandatary, under the belief that he is so, when the mandator has given reasonable cause for such belief.

(1856.) The liabilities of partners for the acts of each other are subject to the rules contained in the title *Of Mandate*, when not regulated by any article of this title.   (1868.) Dormant or unknown partners are, during the continuance of the partnership, subject to the same liabilities toward third persons as ordinary partners under a collective name.   (1869.) Nominal partners, and persons who give reasonable cause for the belief that they are partners, although not so in fact, are liable as such to third parties, dealing in good faith under that belief. (1889.) Joint-stock companies are formed either under the authority of a royal charter, or of an act of the legislature, and are governed by its provisions, or they are formed without such authority, and in the latter case are subject to the same general rules as partnerships under a collective name ; " and upon the decision in the cases of the *Windsor Hotel Company* v. *Lewis* (26 L. C. Jur., 29), which in substance holds that when a person has subscribed for shares in the capital stock of a company which is being organized, has assumed the position of a shareholder, and has paid a portion of the calls made from time to time on stock, he cannot set up irregularities in the original organization of the company as a valid reason for avoiding payment of the calls.   The case of the *Windsor Hotel Company* v. *Date* (27 L. C. Jur., 7), where it was held (1) that a stock subscription to a company to be incorporated is binding on the subscriber, notwithstanding that the act of incorporation subsequently obtained by persons other than the subscriber, declaring that the corporation shall consist of the persons named in the act (of whom the subscriber is not one), and of such persons as should thereafter subscribe for shares in said corporation, and notwithstanding that the person so subscribing never renewed his subscription, and never took any part in any way in the affairs of said corporation.   (2.) That when the plaintiff organized under its act of incorporation the amount required to be paid on its stock was really and *bona fide* paid in.   (3.) That although the directors who made the call might not have been all duly qualified, they nevertheless acted *bona fide*, and their acts were not, consequently, null.   (4.) That any irregularities in calls were covered by the subsequent acts of the directors and shareholders.   And the case of *Canada Shipping Company* v. *The Victor Hardon Cotton Company* (2 Ct. App. Dec. [Canada],

356), where it was held that the appellants had a right to bring an action to recover the price of coal sold by their agents in their own name and without disclosing their principal.

The defendant also called an advocate of experience, and who was acquainted with and learned in the law of the Province of Quebec, and he testified that in his opinion under the circumstances proved, the person for whom the subscription was made would not become a shareholder in such corporation and would not be liable under the general clauses act of that province. His opinion was based upon an examination of the St. Maurice act and the general clauses act. He testified that it was well settled in the Province of Quebec, that to enforce a liability imposed by statute, the statute must be literally complied with, and that his opinion was sustained by the case of *Nasmith* v. *Manning* (5 Sup. Ct. R. [Can.,] 417), where it was held that the want of notice, though an allotment had been made, was sufficient to free the defendant from liability, the defendant having been sued under a statutory clause similar to section 33 of the general clauses act, and by Stephen on Joint Stock Companies, 241, 244.

There was no proof by either party that the courts of the Province of Quebec had decided the question under consideration, or one identical with it. Neither party claimed that any such decision had been made.

Upon these facts, the referee found "that the firm of McGraw & Co., on the 27th day of June, 1870, became and were stock holders in the St. Maurice Lumber and Land Company, to the amount of $100,000, and as such stockholders became liable to the creditors of said corporation to the amount of their unpaid stock."

The defendant insists that the proof in this case fails to show that his testator was a shareholder in the St. Maurice Lumber and Land Company, and hence that his estate is not liable to the plaintiff, as a creditor of that company. There is no liability on the part of the defendant which can be predicated upon any contract or relation which is governed, either by the law relating to principal and agent, or that relating to partnership. If the defendant is liable, his liability is purely a creation of statute. If the plaintiff has any valid claim against the defendant, or the estate represented by him, it is given by the statutes of the Province of Quebec. (*Jessup* v.

*Carnegie*, 80 N. Y., 456, 457; *Pollard* v. *Bailey*, 20 Wall., 526; *Christensen* v. *Eno*, 106 N. Y., 102.)

It is well settled that the question of the defendant's liability upon the plaintiff's claim is governed by the laws of the Province of Quebec and not by the laws of this State. Indeed, this is admitted by both parties. But, where the evidence of foreign law consists entirely of a written document, statute or judicial opinion, the question of its construction and effect is for the court alone, and evidence of a lawyer of another State or country, as to what in the opinion of lawyers there, should be the construction of a statute of that State or country is not admissible where the language of the statute is plain, and there is no decision by the courts of that State or country upon the point in controversy. (*Kline* v. *Baker*, 99 Mass., 255; *Shoe and Leather National Bank* v. *Wood*, 142 id., 564; *Hennessey* v. *Farrelly*, 13 Daly, 468; *Dupuy* v. *Wurtz*, 53 N. Y., 571; citing 12 Moore, 306.)

The character and extent of the liability of a shareholder in such a company is defined by the general clauses act of the Province of Quebec. Section 33 of that act declares: " Each shareholder, until the whole amount of his stock has been paid up, shall be individually liable to the creditors of the company to an amount equal to that not paid up thereon, but shall not be liable to an action therefor by any creditor before an execution against the company has been returned unsatisfied, in whole or in part; and the amount due upon such execution shall be the amount recoverable, with costs against such shareholder." It is under the provisions of this section that the plaintiff seeks to recover in this action.

Subdivision 5 of section 2 of the same act declares that " the expression ' shareholder ' means every subscriber to or holder of stock in the company, and extends to and includes the personal representatives of the shareholders."

Section 4 of the St. Maurice act provides : " The said provisional directors are hereby empowered to open stock books for the subscriptions of parties desirous to become shareholders in said company ; and to determine and allot to parties subscribing for stock in the said company the number of shares (if any) that parties so subscribing shall hold in the capital stock aforesaid ; and the said directors shall cause an entry to be made in the records of their

proceedings, and in the stockholders' book, of the stock so allotted and assigned to parties so subscribing as aforesaid; and the secretary of the said company shall notify the respective parties in writing of such allotment, and upon such entries being made such subscribers shall be held to be shareholders in the said company."

The question whether the defendant's testator and his partner were shareholders in the St. Maurice Company, and liable to its creditors, depends upon the provisions and construction of these statutes. A statute like this, which imposes upon the stockholder of a corporation a personal liability for the corporate debts, must be construed strictly. It is in derogation of the common law, and cannot be extended beyond its literal terms. (*Chase* v. *Lord*, 77 N. Y., 1; *Van Dyck* v. *McQuade*, 86 id., 56.)

The McGraws were not included in the St. Maurice act as provisional directors. Indeed, they had no interest whatever in the enterprise at the time of the passage of that act. If they were shareholders in this company, they became such by virtue of the subscription made by Stoddard at their request.

That the McGraws owned, and were in fact entitled to the interest represented by 1,000 shares of the stock subscribed for by Stoddard, there can be little or no doubt. That they did not intend or desire to become actual subscribers for such shares in their own name is equally manifest. That they did not intend to themselves become shareholders in this corporation, but did intend that 1,000 shares of such stock should be held by Stoddard for them is established beyond question. Upon these facts, can it be held that the McGraws were shareholders? They were not shareholders within the definition given by subdivision 5 of section 1 of the general clauses act, for they neither held the stock of the company nor did they subscribe to it. To say that Stoddard subscribed for it as their agent, would not be justified by the evidence. If they desired to subscribe for the stock, why procure Stoddard to subscribe for them in his own name when they were present at the time? If he subscribed as their agent, why did he not subscribe in their name? The transaction indicates quite conclusively, that the relation between Stoddard and the McGraws in making this subscription was other than that of principal and agent. It is evident that Stoddard was the subscriber for this stock, and that he was to hold the legal title

to 1,000 shares of the same in trust for the benefit of the McGraws, as he had previously held the title to their share or interest in the property belonging to them and their associates. Moreover, the 1,000 shares of stock were never allotted to the McGraws. The board of directors under and in pursuance of the provisions of section 4 of the St. Maurice act made an allotment of this stock to Stoddard. They also caused an entry to be made in the record of their proceedings and in the stockholder's book of the company, of the fact that this stock was subscribed for by and alotted to Stoddard. We do not think it can be held, upon the evidence, that the McGraws were shareholders in this company; and we think that the learned referee was in error in holding that they were.

The general rule is, that a person whose name appears on the the books of a corporation is a shareholder, both as to the corporation and as to the public. * * * Unless the rule has been changed by the statute, the liability to pay calls, and to respond in the event of insolvency to creditors, attaches to the holder of the legal title only, and the courts will not look beyond the registered shareholder or inquire under what equities he holds. (Thompson's Liabilities of Stockholders, § § 177 and 178.)

In Morawetz on Private Corporations, it is said : "Where shares are held by a person as trustee for another, the legal holder of the shares, and not the equitable owner, is primarily liable, both to the company and to its creditors. Neither the company nor its creditors would be entitled to charge the equitable owner as a shareholder." (Sec. 853 ; see, also, *Mitchell's Case*, L. R., 9 Eq. Cases, 363, 366 ; *Ind's Case*, L. R., 7 Ch. App. Cases, 485 ; *Hemming* v. *Maddick*, L. R., 9 Eq. Cases, 175 ; *Williams' Case*, L. R., 1 Ch. Div., 576 ; *Sichell's Case*, L. R., 3 Ch. App. Cases, 119 ; *King's Case*, L. R., 6 Ch. App. Cases, 196.) These cases hold the doctrine quite fully, not only that the persons appearing on the books of the corporation as shareholders are liable to the company and its creditors, but also that when a shareholder is holding the shares in trust for another, that the person for whom they are held is not liable, and that the corporation and creditors can look only to the person in whose name the shares stand on the books of the company.

In Mitchell's case, Lord ROMILLY, M. R., says : "One person may, if he pleases, become a trustee for another. He knows

the consequences of so doing. He knows that he becomes personally liable for the calls, and that he is personally liable to be made a contributory. \* \* \* As between himself and the company he is a shareholder and a contributory, and cannot resist anything; but as between himself and the person for whose benefit he agreed to take them, he has a right over against him; that is to say, he has a right to call upon him who is the real owner of the shares to make good any sums of money which he may have to pay for the calls, or for contribution or the like \* \* \* but that does not prevent him from being the contributory to the company or from in his own person, making good those sums which he may be properly called upon to pay; and the company cannot come against the person in whose name they do not stand by reason of an arrangement between two other persons, which they have not opposed or resisted, and of which they knew a great deal. Whether they could have opposed it at the time is not the question now."

In Ind's case, Sir W. M. JAMES, L. J., says: "In this case Mr. Ind executed a deed by which he undertook to accept fifty shares; he knowingly held himself out to the world as the owner of those fifty shares, and he took on himself all the powers and liabilities of a shareholder. No doubt he was a nominee and trustee for the company, but being on the register for those fifty shares at the time of the winding up, he was fixed there, and left to get such indemnity as he might be able to get from the company who had induced him to take shares."

In *Hemming* v. *Maddick*, Sir R. MALINS, V. C., says: "No doubt this plaintiff, if he is a trustee, having been made a contributory, is entitled to go against his *cestui que trust* for idemnity to the full extent of his liability in respect of the shares; and if he were personally prosecuting this suit, I should be disposed to give him every possible indulgence; but it is admitted that he is not prosecuting the suit, and the person on whose benefit this application is made is the liquidator of the company. It is, I believe, the first time that such a case has occurred. Now, the liquidator is, in my opinion, bound to take the person whose name he finds on the register for better or for worse. It may happen that the shareholder on the register, who is a trustee for another person, is a solvent man, and that the *cestui que trust* is insolvent or it may be just the other

way. The company must take its chance of that. It can only look to the person on the register."

In Williams' case, Graham, a director of the company owned some shares. He contracted to sell them to Williams. They were transferred to Hull as trustee for Williams. Hull's name was upon the list of contributories. The official liquidator sought to take Hull's name off and put Williams' name on. JESSELL, M. R., says: " Mr. Williams was never a shareholder. He had entered into no contract with the company. He made no bargain with the company to undertake any of their liabilities. A trustee for him had, and that trustee is the shareholder. There may be some rights as between Hull and Williams, but I have nothing to do with that. Neither directly or indirectly had Mr. Williams anything whatever to do with the company."

In King's case, King purchased shares in the company and had them transferred to a nominee, who was a man of small means, his object being to prevent its being generally known that he was trafficking in shares in the company. *Held*, that the transaction was a *bona fide* purchase of shares in the name of a trustee, and that King could not be put on the list of contributories in respect of them. *Semble*, that even if King had purchased the shares in the name of a nominee for the purpose of escaping liability, yet, as King was never under any obligation to the company in respect of those shares, he could not be made a contributory.

In *Adderly* v. *Storm* (6 Hill, 627, 628) it was held, that in determining who are stockholders in a company, the court will not look beyond the legal title, except, perhaps, where there has been a fraudulent transfer to avoid liability. In delivering the opinion in that case, BRONSON, J., says: " But where there is nothing but an honest trust, I think the rights of the creditor will be most effectually secured and the policy of the law most fully carried out by looking to the legal ownership of the property. There should be no exception to the rule unless the existence of the trust appears upon the face of the usual evidences of ownership."

In *Mann* v. *Currie* (2 Barb., 294) it was held, that a person to whom stock was originally assigned by a corporation who still holds the script thereof and whose name stands upon the books of the corporation as the owner thereof, is the one to be proceeded against by

the receiver of such corporation for the recovery of any sum due to the corporation upon the stock held by him, although he may, in fact, hold such stock as trustee for another, or have assigned it, provided no transfer has been made upon the books of the corporation.

In *Worrall* v. *Judson* (5 Barb., 210) J. was one of the original stockholders of a company, and at the time of contracting a debt to the plaintiffs by the company there had been no transfer upon its books of the stock which had been owned by J., although he had, in fact, sold it and transferred his certificate of stock with his name indorsed upon it in blank, it was held that J. was liable to the plaintiffs as a stockholder under the act of incorporation of the company.

In *Rosevelt* v. *Brown* (11 N. Y., 148) it was held that a person to whom stock is transferred on the books of a company, and who, upon such books, appears to be the legal owner, is liable to the creditors of the company, though it was transferred to and held by him as collateral security for a debt. In delivering the opinion in that case, EDWARDS, J., says: "But it is said that the agreement which was offered in evidence shows that the stock was pledged and not sold to the defendant, and that, as the pledgee is not the owner of the thing pledged, the pledger never ceased to be the owner of the stock. That may be so, but he has ceased to hold the evidence that he is the owner of it; he has transferred that to another, and this made him the stockholder."

In *Pullman* v. *Upton* (96 U. S., 328) it was held that the transferee of stock who caused the transfer to be made to himself upon the books of the corporation, although he holds it as collateral security for a debt of his transferer, is liable for the balance due on shares of stock so held. In delivering the opinion in that case, Mr. Justice STRONG says: "It makes no difference that the legal owner — *that is, the one in whose name the stock stands on the books of the corporation* — is in fact only as between himself and his debtor a holder for security of the debt, or even that he has no beneficial interest therein."

In *Henkle* v. *Salem Manufacturing Company* (39 Ohio, 552), DOYLE, J., in delivering the opinion of the court, says: "The general rule, independent of statutory provision, is that the liability to pay calls and to respond in the event of insolvency to creditors, attaches to the holder of the legal title *only*. The courts will not

(except in exceptional cases) look beyond the registered shareholder, and it matters not whether such registered shareholder be a mere trustee for another or a pledgee holding the stock as collateral security, he is liable as a stockholder, and must look to his *cestui que trust* or pledger for such indemnity or reimbursement as he may be entitled to." See, also, *Skowhegan Bank* v. *Cutler* (49 Me., 315); *Hale* v. *Walker* (31 Iowa, 344); *Mills* v. *Stewart* (41 N. Y., 384); *Wheelock* v. *Kost* (77 Ills., 296); *National Bank* v. *Case* (99 U. S., 628). These authorities seem quite decisive of the question under consideration. But it is said that the cases of *Burr* v. *Wilcox* (22 N. Y., 551); *Cutting* v. *Damerel* (88 id., 410); *Stover* v. *Flack* (30 id., 64); *Dunn* v. *The Star Fire Insurance Company* (19 W. Dig., 531); *Robinson* v. *The National Bank of New Berne* (95 N. Y., 637); *Leitch* v. *Wells* (48 id., 585); *McNeil* v. *The National Bank* (46 id., 325); *McMahon* v. *Macy* (51 id., 161); *Smith* v. *American Coal Company* (7 Lans., 317); *Cushman* v. *Thayer* (76 N. Y., 365); *Johnson* v. *Underhill* (52 id., 203, 209); *Hall* v. *The United States Insurance Company* (5 Gill., 484), and *Castleman* v. *Holmes* (4 J. J. Marsh., 3) are in conflict with the authorities cited, and adverse to the conclusion that the McGraws were not shareholders.

An examination of the case of *Burr* v. *Wilcox* discloses that the action was against the representative of an alleged stockholder in a company incorporated under the manufacturing act of the State, and under the personal liability provision of that act. Ten shares of stock were apportioned to "Jordon for Wilcox," as appeared upon the records of the company. Wilcox paid all the assessments, ten in number. The certificate of stock was delivered to Wilcox and received by him. The court in that case held that Wilcox was the legal and not the equitable owner of the stock, and that it was, therefore, unnecessary to consider the question whether the mere equitable owner of stock, the legal title to which is held by others, is liable under the statute.

*Cutting* v. *Damerel* was an action to recover an unpaid balance on stock of an insolvent corporation which was incorporated by a special statute. The defendant once owned ten shares of the stock, but sold it to Oley for Bonner & Co., and the certificate, with a transfer signed by the defendant in blank, was delivered. For four

years thereafter dividends were paid to Bonner & Co.. by the corporaticn. And it was held that Bonner & Co. took a complete and perfect title to the stock and were the absolute owners thereof, and the corporation having recognized them as owners could not contradict the title, and that the receiver occupied no better position.

In *Stover* v. *Flack*, where by a verbal agreement between S. and F. it was agreed that S. should subscribe for $1,000 of the capital stock of a manufacturing corporation, one-half of which should belong to each; that S. should hold the same on joint account and receive the dividends thereon, F. to pay the interest annually on $500, one-half the amount paid; that when S. should want the $500 he was to notify F., and if F. did not pay, S. should sell the stock and F. would pay the difference between the sum received on such sale and the par value of the stock. S. accordingly subscribed for $1,000 of the stock in his own name and paid therefor. A few years later the company became insolvent, and the stockholders being called on to pay an amount of debts equal to the stock held by them, S. paid $1,000. Held, that the company, having become insolvent and its stock worthless, S. was not bound to sell it, and F. was clearly liable for one-half of the price paid for the stock. Also, that S. being the nominal owner of the whole stock *was liable* to pay $1,000 in satisfaction of the debts of the company, and was not bound to wait until he was sued and judgment recovered before he paid; and that having paid $500 on that account, which F. was equitably bound to pay, he could recover it back from F.

The Dunn case simply decides, that the delivery of a certificate of stock with a power of attorney to transfer the shares represented by it, will transfer the shares to the person receiving such certificate and power of attorney without any formal transfer on the books of the company.

In *Robinson* v. *The National Bank of New Berne*, it was held, that a provision, in the statute under which a corporation is organized or in its by-laws, requiring the transfer of its stock to be made on its books, is for its benefit, and where the owner of stock has assigned and transferred, for a valuable consideration, the certificate issued to him, and the corporation, when requested to make the transfer, without valid reason, refused so to do, this amounts to a

waiver of the requirement. The transfer is complete and the corporation is bound to recognize the title of the assignee, precisely the same as if it had done its duty and made the proper entries upon its books.

In *Leitch* v. *Wells*, it was held, that the legal title to the stock of a bank passes by an assignment and delivery of the certificate thereof, although there be no transfer on the books of the bank. In *McNeil* v. *The National Bank*, *McMahon* v. *Macy*, *Smith* v. *American Coal Company* and *Cushman* v. *Thayer* substantially the same doctrine is held.

In the Johnson case it was held, that the provision of the act authorizing the formation of manufacturing corporations, which declares that no transfer of stock shall be valid for any purpose whatever until it shall have been entered in the book prescribed, and in accordance with that section, is to be confined in its application to the objects sought by the section, which are the security and ease of remedy of creditors and the information of stockholders and creditors. It does not affect, as between vendor and vendee, the validity of any assignment in reality made, although the stock is not transferred in legal form. Until the transfer upon the books is in fact made, the vendor is the nominal owner and is to be treated as the trustee of the stock for his vendee.

In the Hall case it was held that where an original subscriber to the stock of an incorporated company, bound to pay the installments upon his subscription, from time to time, as they were called in by the company, transfers his stock to another with his assent, such other person is substituted to the rights and obligations of the original subscriber and bound to pay up installments called for, after the transfer to him. Payment of installments by the transferee of stock is evidence of his assent to the transfer to him.

In the Castleman case it was held, that a person subscribing for stock in corporations in the names of infants, for the purpose of avoiding responsibility in case of insolvency of the corporation and enjoying all the benefits arising from the stock, is individually responsible for the debts of the corporation.

A careful examination of these authorities, we think, shows that they do not justify the plaintiff's contention; that they are not in conflict with our conclusion that the McGraws were not stockholders, nor in conflict with the authorities cited to sustain that conclusion.

In the case at bar the subscription was not for stock to be issued to the McGraws as in the Wilcox case, it was for stock to be issued to Stoddard. The stock was allotted to Stoddard, entered in the records and stock book of the company as for him. As between the company and Stoddard, or between the company and the McGraws, Stoddard was the subscriber, the allottee and legal owner of $200,000 of the stock of this company. This allotment was made by the company with the consent of both Stoddard and the McGraws. Stoddard's legal title was as absolute to one portion of that stock as it was to another. The rights of the McGraws to any portion of this stock or interest under it were rights which existed between them and Stoddard. No rights or liabilities ever existed between the McGraws and the company or between the McGraws and its creditors.

There was no evidence of any agreement, arrangement or understanding by which Stoddard was to transfer to the McGraws any of the stock allotted to him. Hence, the authorities bearing upon the validity of such transfers have no application here.

These considerations lead us to the conclusion that the referee erred in holding that the McGraws were shareholders or liable to the creditors of the St. Maurice Company. This conclusion leads to a reversal of the judgment and order herein, and hence, it is unnecessary to examine the other questions presented on the argument or by the briefs of the parties.

Judgment and order appealed from should be reversed, the referee discharged, and a new trial ordered.

HARDIN, P. J., and FOLLETT, J., concurred.

Judgment and order reversed, and a new trial ordered before another referee, with costs to abide the event.