BURR *v.* WILCOX, Executrix, &c.

One, to whom stock has been apportioned in a manufacturing corporation organized under the general law (ch. 40 of 1848), is a stockholder, although no certificate has been issued, and the apportionment was made for him, to an agent, who subscribed at his request.

As soon as the corporation has any property or valuable franchise, the members become stockholders in proportion to their respective interests. The certificate, or scrip, is not a transfer from the corporation, but merely evidence of an existing right.

The stockholder is liable for interest upon an amount equal to his stock, from the commencement of a suit against him, to enforce his individual responsibility.

APPEAL from the Superior Court of the city of New York. Action to recover from the defendant the sum of $1,000 and interest from June 23, 1858, when the suit was commenced, on account of a judgment for $1,756.98 upon a debt contracted by the Hudson River Stone Dressing Company on the 19th January, 1854. The complaint alleges that Elisha C. Wilcox, the defendant's testator, was a stockholder in said company to the amount of $1,000, and as such was, in his lifetime, liable for said debt to the amount of his stock, under the personal liability provisions of the general law (ch. 40 of 1848) for the incorporation of manufacturing companies.

Upon the trial, these facts were admitted: A certificate of ten shares of the capital stock, dated February 6, 1854, was issued to Wilcox. This stock was apportioned to one Samuel H. Jordan for Wilcox, on the 15th of April, 1853, pursuant to a subscription for capital stock, originally made by Jordan for Wilcox, and at his request—the amount subscribed for to be paid in ten equal monthly installments. Wilcox paid all the installments—the first payment being on the 3d of May, 1853.

Wilcox was not one of the signers of the articles of association, and derived such interest as he had in its stock from the facts before stated. A by-law of the company, which was in

force during its whole existence, declared that the stock of the corporation was transferable only on its transfer-book, by the holder thereof or his attorney, on the surrender of his certifi‑ cate. No stock transfer whatever to Wilcox was contained in the transfer-book of the company, and no shares of the com‑ pany's stock had ever been transferred to the defendant's testa‑ tor, or to any other person or persons for him or his use, on the transfer-books.

The plaintiff had a verdict, subject to the opinion of the court, which, at general term, rendered judgment in his favor. The defendant appealed to this court. The cause was submit‑ ted on printed arguments.

*Capron & Lake*, for the appellant.

*Joseph N. Balestier*, for the respondent.

CLERKE, J. The counsel for the defendant contends that, as the stock was subscribed for in the name of Jordan, although really for Wilcox, the latter was not a stockholder within the meaning of the statute; and he says that the spirit of the doc‑ trine upheld in the authorities to which he refers is, that only those having the legal title are stockholders, and that the court can only look to the legal title in determining who are liable under the 10th section of the statute.

Supposing, for a moment, that the counsel is correct in this position, can it be truly said that Wilcox was merely an equita‑ ble owner of this stock? Jordan subscribed for this stock for Wilcox, as one of the original subscribers, at Wilcox's request: on the 15th April, 1853, it was apportioned to Jordan for Wilcox, as appears on the records of the company. Wilcox himself paid for the stock, in monthly installments, the com‑ pany receiving it from him as principal; and when all his installments were paid, he received, on the 6th of February, 1854, his certificate of stock. Under these circumstances, he was, I think, a legal, and not merely an equitable, owner of the stock. Jordan acted merely as his agent; the relation

Burr *v.* Wilcox.

between him and Wilcox was not of a trustee and *cestui que trust,* but that of principal and agent; which, although, in a certain sense and for certain purposes, involving the idea of a trust, does not make the principal the equitable, and the agent the legal, owner of everything he buys for the former in his own name, particularly when he discloses the name of his principal. If it is known to the seller that the agent acts on behalf of another, and that other is recognized by the seller as the real owner, the principal is at once entitled to the possession of the thing purchased. So, in this case, the certificate of stock was issued to Wilcox in his own name; and, although the name of Jordan was originally employed, the certificate of stock, in view of the whole circumstances, related back to make Wilcox the legal owner from the commencement of the transaction. He was entitled to demand a share of the profits from that time, if any profits accrued: he then became a stockholder, and continued to be a stockholder at the time this action was commenced. The appellant's counsel seems to insist that a transfer of stock in a transfer book is necessary to constitute a person a stockholder. After the original issue of stock, perhaps, any subsequent holders, in order to be made liable, should have the stock transferred to them on the books, or their names as stockholders should appear in the index book, or in the register of stockholders. But, in the present case, Wilcox was an original subscriber, through his agent Jordan; and, of course, no transfer, as from an old to a new stockholder, was requisite. The stock was issued, not transferred, to him.

The minor objections taken by the defendant's counsel, are equally untenable.

The judgment of the Superior Court of New York should be affirmed.

SELDEN, J. The statute upon which this action is founded (Sess. Laws of 1848, ch. 40, § 10), makes the "stockholders of every company" incorporated under the act of which that section is a part, liable to the creditors of the company to an amount equal to the amount of stock which they hold. It is

contended that the term stockholders, as here used, includes such persons only as hold the legal title to the stock of the company, and that the defendant's testator was never such a stockholder in the Hudson River Stone-Dressing Company, for two reasons: 1. Because he never obtained any assignment or transfer from Samuel H. Jordan, in whose name the original subscription was made; and, 2. Because no person could be a stockholder until stock was transferred to him upon the transfer book, in the manner prescribed by the by-laws of the company.

The first of these objections is sufficiently answered by the admitted facts, that the subscription was made by Jordan for the benefit of Wilcox; that the latter paid the installments; and that the company recognized his ownership of the stock, and issued the certificate to him. The fact that Jordan used his own name in subscribing gave him no right to insist that the company should recognize him as the owner of the stock, after it was made to appear that he was a mere agent for Wilcox, who alone had any interest in the stock.

Perhaps, if Jordan had insisted upon his right, under his subscription, to have the stock apportioned to him, parol evidence might not have been admissible, as between him and the company, to prove that he subscribed merely as agent. But the stock having been apportioned to Wilcox, and the latter having paid from time to time the installments upon it, and finally received the certificate, without, so far as appears, any objection or claim on the part of Jordan, the presumption is, that the latter acquiesced in the recognition by the company of Wilcox as the real owner of the stock. There is no law, or rule, which would require a written assignment from Jordan of his rights as a subscriber, prior to the apportionment. All that could be necessary, in any case, was, that he should waive his merely nominal right in favor of his principal; and such a waiver is presumptively established by the circumstances admitted by the stipulations on the trial.

The second reason given why Wilcox never became a stockholder, viz., that there was no transfer to him upon the transfer book, is founded upon a misapprehension of the effect of the

statutory provision that the stock should be transferable in such manner as should be prescribed by the by-laws of the company, and of the by-law adopted in pursuance thereof. This provision has reference solely to the transfer of stock from one stockholder to another, and not at all to the original issue of the certificates of stock by the company to its subscribers. That this was so understood by the company, is shown by the by-law itself, which provides that the stock should be transferred only upon the transfer book and on surrender of the certificate, &c. A previous issue of the certificates of stock is, therefore, assumed.

There can, I think, be no doubt that this is the true construction of the statute. The issuing of the original certificates is in no sense a transfer of stock. The interest of the parties to whom they are issued is the same before as after such issue. The certificate is simply a written acknowledgment by the company of the interest of the subscribers in its property and franchises. It transfers nothing from the company to the subscriber, but simply affords to the latter evidence of his right. The by-law, therefore, could have no application to the act of the company in issuing its certificates to the various subscribers for their respective shares.

It follows conclusively, from these views, that Wilcox was a legitimate stockholder of the company, and held the legal title to the shares of stock mentioned in the certificate issued in his name. It is unnecessary, therefore, to consider the question whether the mere equitable owners of stock, the legal title to which is held by others, are liable under the statute in question.

But it is further contended that, if Wilcox was ever a stockholder, he did not become such until after this debt was contracted, and, hence, that the statute liability upon which this action is founded does not attach. The first apportionment of the stock was on the 15th of April, 1853. At that time ten shares were assigned or apportioned to "Jordan for Wilcox," as appears by the records of the company; but the certificate issued to Wilcox for these shares bears date the 6th day of

February, 1854, and the entry in the book containing the alphabetical list of stockholders is as follows: "Feb. 6th, 1854, E. C. Wilcox, ten shares." The plaintiff's debt was contracted on the 19th of January, 1854. If, then, as is claimed, the testator, Elisha C. Wilcox, never became a stockholder until the certificate was issued and his name entered in the index book, it would be necessary to determine whether he could be made liable under the statute for a debt previously contracted. If, on the other hand, he became a "stockholder" before or at the time of the apportionment, no such question could arise.

The word stock has various significations; but, as applied to a joint stock association or corporation, it means the property and franchises of the corporation. It is sometimes used to designate the certificate, or scrip, issued to the stockholders; but this is an inappropriate use of the word. The scrip is not the stock. The moment a corporation has either franchises or property of any kind it has stock; and the distributive share of its members respectively, in this stock, will depend upon the terms of its charter or articles of association. Whether subscribers to the stock of this particular corporation acquired any legal interest in its property prior to the apportionment upon the 15th of April, 1853, could only be determined by an examination of its certificate of incorporation and the history of its formation. But at that time, if not before, every person to whom shares were then assigned by the trustees acquired a proprietary interest in the stock of the company, if it then had property or valuable rights, and if not, then as soon as any was obtained, to the extent of the share or shares so assigned. No further act on the part of the company was necessary, in order to invest them with this interest.

But it seems to be supposed by the counsel for the defendant that, because section 25 of the act in question makes it the duty of the company to keep a book containing a list of the names of the stockholders alphabetically arranged, therefore no one could become a stockholder within the meaning of the law until his name was entered in that book. This is, manifestly, erroneous. The statute could not have that effect, unless

Burr *v.* Wilcox.

it was made an absolute condition that, to constitute a stockholder, the name must be so entered. It contains, however, nothing of this kind. It simply imposes a duty upon the company, the penalty for the neglect of which would be a forfeiture to the public of the corporate franchise. It certainly was not intended to enable the company to exempt the actual owners of its stock from the liabilities imposed by the act by omitting to enter their names in the index book, which would be the effect of the construction insisted upon by the defendant's counsel. The testator, Elisha C. Wilcox, became, without doubt, a stockholder within the meaning of the act, from the time when his interest in the property or stock of the company accrued, which, in any view which can be taken of the facts, was long before the debt in controversy was contracted.

This disposes of the case, with the exception of the point made upon the allowance of interest. The language of the statute is, that the stockholders "shall be severally individually liable to the creditors of the company in which they are stockholders to an amount equal to the amount of stock held by them respectively," &c. This liability cannot, I think, be said to attach upon any particular stockholder until a suit is commenced against him to enforce it. The creditor has a right to select among the stockholders the individual against whom he will proceed; and until he has made this selection, no particular stockholder is liable, and hence no interest can be allowed for any previous time. But, from the time of the commencement of a suit for a debt exceeding the amount of the principal of the defendant's stock, I see no reason why interest should not be allowed. It has then become a fixed liability for a specific amount, and ought, upon general principles, to carry interest.

The judgment of the Superior Court should be affirmed.

All the judges concurring,

Judgment affirmed.