Lois STOVER, Administratrix, and DANIEL FISH, Administrator, &c., *v.* DAVID H. FLACK.

By a verbal agreement between S. and F., it was agreed that S. should subscribe for $1,000 of the capital stock of a manufacturing corporation, one-half of which should belong to each; that S. should hold the same on joint account, and receive the dividends thereon, F. to pay the interest annually on $500, one-half the amount paid; that when S. should want the $500 he was to notify F.; and if F. did not pay, S. should sell the stock, and F. would pay the difference between the sum received on such sale and the par value of the stock. S. accordingly subscribed for $1,000 of the stock, in his own name, and paid therefor. It was a part of the bargain that the agreement should be put in writing, but it never was. A few years later the company became insolvent, and the stockholders being called on to pay an amount of debts equal to the stock held .by them, S. paid $1,000.

*Held,* 1. That the company having become insolvent, and its stock worthless, S. was not .bound to sell it; and F. was clearly liable for one-half the price paid for the stock.

2. That S., being the nominal owner of the whole stock, was liable to pay $1,000 in satisfaction of the debts of the company, and was not bound to wait until he was sued, and judgment recovered, before he paid; and that having paid $500 on that account, which F. was equitably bound to pay, he could recover it back from F.

3. That the statutory exemption of executors. guardians, and others, trustees of an express, trust, from liability for the debts of a corporation in which they hold stock in their fiduciary capacity, does not reach such a case.

4. That although F. might have insisted on the performance of the condition that the agreement should be reduced to writing, it was competent for him to waive it, by recognizing his liability on the contract, although it had never been reduced to writing and signed.

5. That F.'s liability for the $500 paid by S. on account of debts, did not accrue until the stock was paid by S.; and that the statute of limitations did not begin to run until such payment was made.

THE facts in the case, which seem to have been established by the verdict of the jury are: That in 1852 a corporation was organized under the general act of 1848, (Laws of 1848, chap. 40,) called the Diamond Mills Manufacturing Company. That the plaintiff's intestate, Peter

Stover, took and subscribed towards the capital stock thereof, ten shares, of the nominal or par value of one thousand dollars. That said stock was taken under an arrangement made with the defendant previous to the sub-scribing for and taking the same, that the plaintiff's intestate should subscribe for and take the stock, and pay for the same, on joint account. That the intestate should hold the stock, and that the defendant should pay him semi-annually the interest on one-half of the purchase money, and that the defendant should be entitled to all the divi-dends which the intestate might receive on that portion of the stock belonging to the defendant. It was further under-stood that if Stover, the plaintiff's intestate, desired to realize the money advanced for the defendant in the pur-chase of the stock, he might go into the market and sell the same, after giving the defendant notice; and the defend-ant was then to have the right to pay the money advanced and take the stock; and if the stock sold for less than par, the defendant was to pay the deficiency, and if it sold for more than par, he was to have the surplus. At the time this arrangement was entered into, it was understood that the parties were thereafter to meet and have it reduced to writing. This was never done, Stover having died soon after the arrangement was entered into. Stover, in execu-tion of this agreement, subscribed for and took the stock, and agreed to pay $1,000 therefor. Such payment was made, by the company purchasing flax of Stover, and on the 23d of March, 1853, a settlement was made between the plaintiffs and the company, at which time the company had received $1,272.82 in flax, and after deducting the amount of Stover's subscription for the stock, $1,000, the company paid to the plaintiffs the balance. It is stated in the case that the amount subscribed by Stover for the stock was proved to have been paid by his estate, and that the company became insolvent. It was also proved on the trial that on the 29th of September, 1856, a judgment was

recovered against the company for $7,992.57, upon which an execution was issued, and the same was returned unsat-, isfied. That a circular was issued by the officers of the company to its stockholders, showing the company insolvent exceeding $20,000, and that all its estate, real and personal, had been sold, and requiring each stockholder to pay upon the outstanding debts of the company a sum equal to the amount of their respective subscriptions. That on the 28th of February, 1859, the plaintiffs, as the representatives of said Peter Stover, paid the further sum of $1,000 towards the discharge of the debts of the company, pursuant to said circular and its requirements. Verdict for the plaintiffs for $500 paid for the defendant's stock on the 23d of March, 1853, and interest thereon from that day, and for the $500 paid on the 28th of February, 1859, on account of the debts of the company, and interest thereon from that day, making $1,374.32. The defendant moved for a new trial, on the judge's minutes, which was denied, and the judgment was affirmed at the general term. This action was commenced on the 22d of March, 1859.

*W. A. Beach*, for the appellant.

*John K. Porter*, for the respondent.

DAVIES, J. One ground of defense interposed is the statute of limitations, and that has no application, except to the payment of the stock. It is contended, on the part of the defendant, that such payment was made by Stover in his lifetime by the delivery of the flax, and that such purchase of the flax by the company from Stover, produced an indebtedness on his part to the company for the stock. But it is to be borne in mind that Bradshaw, the treasurer of the company, testified that in fact such application of the mutual indebtedness was not made until the 23d day

of March, 1859, when a settlement of the indebtedness of the company to Stover for the flax purchased, and his indebtedness to it for the stock, was made between the company and the plaintiffs as the representatives of Stover, and a balance being found due to the plaintiffs, the same was paid to them. But a conclusive answer to this view is found in the statement of the case, that this stock was paid for by the estate of Stover. This necessarily implies that it was not paid for by Stover in his lifetime, but by his representatives after his death, and there is no ground for any suggestion that they paid for it at any other time, or in any other manner than by the adjustment and settlement of accounts on the 23d of March, 1853, as detailed by Bradshaw. The defendant's liability did not accrue until the stock was paid for by Stover, or his representatives; and the statute consequently did not commence to run until such payment. It being made as we have seen, on the 23d of March, 1853, and this action having been commenced on the 22d of March, 1859, this ground of defense has entirely failed. Neither does the statute of frauds interpose any difficulty in the way of the plaintiff's recovery. He did not become a purchaser of the stock from their intestate. The authority given by the defendant was, that Stover should subscribe, take and pay for the stock in his, Stover's name, and that the defendant was to own the one-half part thereof. This arrangement constituted Stover his agent for those purposes, and the law implies a promise on his part to repay to Stover whatever sum he should advance and pay for the defendant's stock. Although the stock stood in the name of Stover, it became and was the defendant's stock. By virtue of this arrangement he became a stockholder in the company, and as such, liable to contribute and pay towards the discharge of the debts of the company, an amount equal to the amount of the stock so taken and owned by him. (*Burr* v. *Wilcox,* 22 N. Y. 551.) The money paid for the stock was so much

money paid, laid out and expended for the defendant, and at his request. The defendant was not entitled to a transfer of the stock until payment of the amount paid therefor. If he wished to terminate his liability under the arrangement proven, it was his duty to have required the plaintiffs to sell the stock, and if there was any deficiency, to pay the same. From the facts testified to on the trial, it is quite apparent that the defendant was willing to let the stock remain with the plaintiffs under the arrangement made with their intestate. Without any call from the defendant, no duty was imposed on them to sell the stock, and it being shown on the trial that the same was worthless and of no value, they were not precluded from calling upon the defendant for payment, without making such sale. It would have been an idle ceremony, and in no manner could have tended to the benefit or advantage of the defendant. This reservation of the right to sell and charge the defendant with the deficiency, was made for the benefit of Stover, to secure him for the moneys advanced, and not as a condition of the defendant's liability. It was a cumulative remedy to ensure a reimbursement to him of the money advanced for the defendant, and did not in any sense, impair his right to call upon the defendant for repayment. We must take the whole agreement together; and by its terms we find that the defendant expressly promised to pay to the deceased the cost of over one-half of the stock taken by him. The agreement actually made, and in compliance with the terms of which the deceased subscribed for the stock, and incurred the liabilities of a stockholder, was not abrogated, or rendered ineffectual by reason of the parties thereto not having subsequently reduced the same to writing, as was contemplated to be done, at the time the same was entered into. We have seen that it was not essential to its validity that it should have been in writing, and the omission, or the unwillingness of the party to reduce the same to writing, did

not terminate the obligations, which the agreement actually made created.

Stover was liable to the extent of the stock standing in his name, for the debts of the company. The creditors of the company under the authority of *Burr* v. *Wilcox* (*supra*), could also have compelled the defendant to contribute to the amount of stock actually owned by him, although standing in Stover's name. No question appears to have been made on the trial, that the company was insolvent, and that the amount held by each stockholder was necessary to be contributed for the payment of its debts. The payment was made by the agent on account of his principal, and no point was made on the trial, that the defendant was not liable to reimburse the same, if he was adjudged to be the owner of the stock purchased under the arrangement proven. We think clearly he was, and that he was legally bound, not only to pay the sum advanced in payment of the stock, but also the amount paid by the plaintiffs to discharge the statute liability, created in favor of the creditors of the company.

We arrive at the conclusion, therefore, that the judgment should be affirmed.

MULLIN J. The agreement, to enforce which this action was brought, seems to have been that the testator should subscribe for $1,000 of the capital stock of the Diamond Mills Manufacturing Company, one-half of which should belong to the defendant, the testator to hold the same and receive the dividends thereon, the defendant to pay the interest annually on the $500, and when the intestate wanted the $500 he was to notify the defendant, and if he did not pay, the intestate should sell the same, and the defendant would pay the difference between the sum received on such sale and the par value of the stock.

A few years after the intestate subscribed for the stock, the company became insolvent, and the stockholders were

called on to pay an amount equal to the stock held by them to pay the debts of the company, and the intestate paid $1,000, and $500 of that sum is also claimed in this suit. It was a part of the bargain that the agreement should be put in writing, but it never was.

By the contract the intestate paid for the defendant, and at his request, $500, which was to be repaid by the defendant. One-half of the stock subscribed for became and was the property of the defendant, although it stood in the name of the intestate. It was tendered to the defendant before suit brought, and thus the liability of the defendant perfected, so far as the ownership of the stock was concerned.

By the contract the intestate was bound to sell the stock, and in that way reimburse himself so much of the amount paid as the stock would bring on the sale. No sale was made, and hence it is claimed a condition precedent to a recovery in this case has not been performed.

But it clearly appears that the company had become insolvent, and its stock utterly worthless; there was nothing to sell. The defendant was clearly liable for one-half the amount paid for the stock.

The intestate, being the nominal owner of the whole stock, was liable to the company, or the creditors, to pay $1,000 in satisfaction of the debts of the company. On the facts proved, there is no reason to doubt the power of the creditors to enforce the payment of this sum; and that being so, the intestate was not bound to wait until he was sued and judgment recovered, before he paid.

But it is said that the intestate was a trustee of the defendant's share of the stock, and hence not liable to be sued for it. Neither the company nor its creditors had any notice of any trust, and whether the intestate might have paid his own half and on informing the company or creditors of the manner in which he held the defendant's share, have given it or them a right of action against the defend-

ant, is not very important. While it stood in the intestate's name he was liable for the whole; and he has paid $500 for the defendant's benefit, which the defendant was equitably bound to pay.

It is just and right that executors, administrators, guardians of minors, and others, trustees of express trusts, should not be liable for debts of a corporation in which they hold stock in their fiduciary capacity. But there is no reason why a person holding stock as the intestate held that belonging to the defendant, should be exempt. The statute exemption does not reach the case.

It is said the contract as to the stock was never binding because by its terms the agreement was to be put in writing, and it was not. Conceding that the defendant might have insisted on the performance of this condition, it was competent for him to waive it; and he seems to have repeatedly recognized his liability on the contract, although it had never been reduced to writing and signed.

After a careful consideration of all the points raised by the defendant's counsel, I can discover no grounds on which the judgment can be reversed. It is therefore affirmed, with costs.

JOHNSON, J., was in favor of a reversal. All the rest of the judges being for affirmance, judgment affirmed.