Kimball v. Davis.

GEORGE F. KIMBALL, Respondent, v. ALEXANDER DAVIS, Appellant.

St. Louis Court of Appeals, December 27, 1892.

1. **Corporations:** SHAREHOLDERS. A certificate of stock is only one of the evidences of the title of the shareholder, and the issue of one is not necessary for the purpose of charging him with the liability of a shareholder in favor of a creditor.

2. ————: CONSTRUCTION OF FOREIGN STATUTE: EFFECT OF INTERPRETATION GIVEN IN FOREIGN JURISDICTION. In the construction of a foreign statute the interpretation placed upon the statute by the highest court of the foreign jurisdiction is conclusive.

3. ————: ————. A statute of Iowa provided that the failure to comply substantially with another statutory requirement for the publication of a certain notice should render the individual property of the stockholders liable for corporate debts. *Held*, that the word stockholders, as used in this statute, included corporators or members having a direct financial interest in the business of the corporation with a power to participate in the profits and in the conduct of its affairs.

4. ————: ————. *Held* also that, under this statute, the publication of such notice was a condition precedent, not necessarily to the existence of the corporation as an artificial body, but to clothing its members with the immunity of corporators from liability for corporate debts.

5. **Foreign Corporators:** LIABILITY OF SHAREHOLDERS: ENFORCEMENT OF FOREIGN STATUTE. Penal statutes are local and are not enforced on any principle of comity outside of the jurisdiction enacting them. But *held*, that the aforesaid statute of Iowa was not penal, since it did not take away anything already granted, but merely prescribed a condition precedent to the acquirement by shareholders of immunity from liability for corporate debts.

6. ———: ———: ———. *Held*, in the course of discussion, and without regard to the question of the validity of an incorporation obtained by citizens of one state under the laws of another with the intention of carrying on business in their own state, that such incorporators cannot, under the guise of being exempt from foreign penal statutes, import into their own state by means of such incorporation any greater immunities or franchises than they possess in the state of their incorporation.

7. ———: FOREIGN STATUTORY PROVISIONS FOR PUBLICATION OF NOTICE: SUFFICIENCY OF NOTICE. *Held* that a certain notice published in pursuance of the aforesaid statute of Iowa did not comply with the requirements of the statutes of that state, in that it did not state truly either the amount of the capital stock authorized, or the times and conditions on which it was to be paid in; also that a second notice was defective in the latter respect.

*Appeal from the St. Louis City Circuit Court.*—Hon DANIEL D. FISHER, Judge.

AFFIRMED.

*Hiram J. Grover* and *J. L. Bruce*, for appellant.

(1) Davis could be made a stockholder only by contract or estoppel. *Burgess v. Seligman*, 107 U. S. 20; also 92 Mo. 635. (2) He was not a stockholder by contract, never having subscribed for, agreed to pay for or owned any shares, except one which he purchased to qualify him as a director to protect his interest as a creditor. *Burgess v. Seligman, supra.* (3) The law of Iowa permits a corporation to come into existence without having its stock subscribed for. *Johnson v. Kesler*, 76 Iowa, 411. (4) Davis' acting as incorporator and director did not estop him from denying that he was a shareholder; inasmuch as neither at common law nor under the Iowa statutes are incorporators or directors required to be stockholders. Cook on Stockholders, secs. 4a, 619. One person may incorporate himself under the Iowa statutes, and conduct the corporate business without directors.

Iowa Code, sec. 1088; Cook on Stockholders, sec. 709. (5) Davis was a creditor of the corporation, and as such had a right to have a majority of the shares of stock filled out in his own name, but retained in the stock book, in the possession of the company, without paying anything for it, and could vote such shares and elect himself director, to control the corporate affairs, in his interest as a creditor, without thereby constituting himself a stockholder. He could exercise the voting privilege of a stockholder without becoming the actual owner of the stock. *Burgess v. Seligman*, 107 U. S. 20; 92 Mo. 635. (6) If the sole object of his sitting in the board as a director was the protection of his interest as a creditor, his paying for one share, for the purpose of enabling him to sit in the board for that sole purpose, could not modify the principle above stated. (7) There is no stock until the stock is issued to shareholders; up to that time there is a mere possibility or privilege of the creation of stock. *Chouteau v. Dean*, 7 Mo. App. 214; *Burgess v. Seligman*, 107 U. S. 37. (8) The liability here in question is a statutory liability. The Iowa statute which created the liability prescribed a special method for its enforcement, to-wit: The stockholders' property must be taken upon an execution issued against the corporation, thus making a judgment against the corporation a condition precedent. Iowa Code, secs. 1082, 1083; *Bayliss v. Swift*, 40 Iowa, 651; *Bank v. Green*, 64 Iowa, 448. This remedy is exclusive and not cumulative, and must be pursued in every state. Cook on Stockholders, sec. 223; *Lowry v. Inman*, 46 N. Y. 119–127; *Morley v. Thayer*, 3 Fed. Rep. 737–749; *Erickson v. Nessmith*, 15 Gray, 221; *Knowlton v. Ackley*, 8 Cush. 917; *Dauchy v. Brown*, 24 Vt. 197; *Pollard v. Bailey*, 20 Wall. 527; *Bank v. Franklyn*, 120 U. S. 758. (9) The allowance of plaintiff's claim by the assignee does not change the

principle, for the reason that no execution can issue against the corporation on the assignee's judgment of allowance. (10) Statutory provisions which impose on stockholders a liability for corporate debts for a common-law or stock liability are intended to break down that protection which corporations are intended to afford to stockholders, and are, therefore, in derogation of common law, and must be construed with the greatest strictness. Cook on Stockholders, sec. 214; *Sayles v. Brown,* 40 Fed. Rep. 8. (11) By honest mistake a defective notice was published as required by statute within three months. As plaintiff does not claim ever to have read the notice or to have been influenced or deceived by it in giving credit, only the state could take advantage of the difficulty on *quo warranto,* inasmuch as the corporation came into existence prior to the publication of notice, and which publication was a matter required to be made after corporate existence had been achieved, and not as a condition precedent thereto. *Bank v. Davies,* 43 Iowa, 424; *Stokes v. Findley,* McCreary, 211; *Mining Co. v. Richards,* 95 Mo. 111. (12) The second notice was sufficient, and, although not published within three months, was published before the corporation entered upon any business. Such subsequent publication was permissible under the laws of Iowa. *Bank v. Davies,* 43 Iowa, 425, 435. (13) The fact that the notice was published on Sunday would not invalidate it. 1 Daniel on Negotiable Instruments [4 Ed.] p. 88; 2 Benjamin on Sales, sec. 842; *Glover v. Chouteau,* 19 Mo. App. 656; *Haufman v. Hamm,* 30 Mo. 388; *Eason v. Witcofsky,* 29 S. C. 245; *Johnson v. Day,* 17 Pick. 109; *Clough v. Shepherd,* 31 N. H. 490; *Pierce v. Atwood,* 13 Mass. 324; *Smith v. Ibling,* 47 Mich. 614; *Miles v. McDermott,* 31 Cal. 271; *Saylor v. Palmer,* 31 Cal. 240; *Gosweiler's Estate,* 3 Pa. 200; *Thayer v. Felt,* 4 Pick. 354; *Kellog*

*v. Karrico*, 47 Mo. 158; *Burk v. Daily*, 14 Mo. App. 545. (14) The liability sought to be enforced is penal, and cannot be enforced by the courts of Missouri. Cook on Stockholders, sec. 223; *Sales v. Brown*, 40 Fed. Rep. 8–13; *Derrickson v. Smith*, 27 N. J. L. 166; *Halsey v. McLean*, 12 Allen, 438, approved in *Engine Co. v. Hubbard*, 101 U. S. 188; *Bank v. Price*, 33 Md. 487; *Wilds v. Suydam*, 64 N. Y. 173; *Flash v. Conn*, 109 U. S. 37; *Bird v. Hayden*, 1 Rob. (N. Y.) 383; *Ochiltree v. Railroad*, 54 Mo. 117; *Kritzer v. Woodson*, 19 Mo. 327. (15) The plaintiff could not have enforced this liability against Davis in the method here pursued, if he had brought his suit in the state of Iowa, and under the provisions of section 1 of the Missouri act of April 20, 1891, he cannot proceed by any other method in this state.

*Henry Hitchcock*, for respondent.

(1) Appellant was a stockholder in the Eagle Glass & Metal Company, within the provisions of section 1068 of the Iowa Code, at and before the date when the debt sued for was contracted, to-wit, June, 1890. In July, 1889, appellant became legal owner of ten thousand shares of said stock. To constitute a person a stockholder in a corporation it is not necessary that a certificate should have been issued to him. *Schaeffer v. Ins. Co.*, 46 Mo. 248, 250; *Erskine v. Loewenstein*, 82 Mo. 301, 306; *Spring Co. v. Harris*, 20 Mo. 383, 390; *Bank v. Gifford*, 47 Iowa, 575; *Ins. Co. v. Sherwood*, 72 Mo. 461; *Brigham v. Meade*, 10 Allen, 255; Cook on Stockholders, secs. 373, 383. On June 10, 1890, appellant bought of the company one share of "treasury stock," paying $1 cash therefor, expressly to qualify himself as a director. On June 30, 1890, he voted that and other stock at a stockholders' meeting,

was elected a director thereat, and thereafter acted as such. Under these facts, appellant is estopped from denying that he was a stockholder on and after June 10, 1890. Cook on Stockholders, sec. 52; 1 Morawetz on Corporations, sec. 308; *Bank v. Case,* 99 U. S. 631. It is immaterial whether appellant was a stockholder before or after the corporate debt here sued on accrued. *Barrick v. Gifford,* 47 Ohio St. 180; 21 Am. St. Rep. 104. (2) In the construction of a statute of a sister state, the courts of Missouri will follow the interpretation put upon such statute by the courts of that state. *McMerty v. Morrison,* 62 Mo. 140; *Lyman v. Campbell,* 34 Mo. App. 217; Endlich on Interpretation of Statutes, sec. 364; *Aultman's Appeal,* 98 Pa. St. 513; *Flash v. Conn,* 109 U. S. 378. The construction placed upon the Iowa statute in question by the supreme court of Iowa is that the statutory liability thereby imposed is not a penalty, but contractual in its nature; and that it is a primary liability, enforceable directly against the stockholder, without suit brought or judgment obtained against the corporation. *Bank of Davenport v. Davies,* 43 Iowa, 424; *Eisfeld v. Kenworth,* 50 Iowa, 389; *Marshall v. Harris,* 55 Iowa, 182; *Kaiser v. Bank,* 56 Iowa, 104; *Clegg v. Hamilton, etc., Co.,* 61 Iowa, 121; *Hodgson v. Cheever,* 8 Mo. App. 318, 321–2; *Hurt v. Salisbury,* 55 Mo. 310; *Richardson v. Pitt,* 71 Mo. 128. A like rule is applied in this and other states, and by the Unied States supreme court, in the following cases: *Corning v. McCullough,* 1 N. Y. 47; *Lowry v. Inman,* 46 N. Y. 119, 125; *Wiles v. Suydam,* 64 N. Y. 176; *Dennick v. Railroad,* 103 U. S. 18; *Flash v. Conn,* 109 U. S. 377; *Chase v. Curtis,* 113 U. S. 458; note to *Attrill v. Huntington,* 70 Md. 191; 14 Am. St. Rep. 353; notes to *Thompson v. Bank,* 19 Nev. 103; 2 Am. St. Rep. 797, 830, 832, 846–7, 850; *Bigelow v. Gregory,* 73 Ill. 197; *Ins. Co. v. Cram,* 43

N. H. 641; *Harris v. McGregor*, 29 Cal. 124; *Field v. Cooks*, 16 La. Ann. 153. (3) The first notice of organization of the Eagle Glass & Metal Company, admitted to be the only notice published within the three months prescribed by the Iowa statutes, did not "comply substantially with the foregoing requisitions [of the statute] in relation to organization and publicity." *First.* In that it failed to state truly the amount of capital stock and the time of the commencement and termination of the corporation. *Eisfeld v. Kenworth*, 50 Iowa, 389; *Marshall v. Harris*, 55 Iowa, 182; *Argal v. Smith*, 3 Denio, 435. *Second.* In that, as charged in the petition and not denied in the answer, it was published only on Sunday, which was not a publication in the eye of the law. McClain's Annotated Code of Iowa, sec. 5438; *Shaw v. Williams*, 87 Ind. 158; *Scammon v. Chicago*, 40 Ill. 146; *Ormsby v. Louisville*, 79 Ky. Rep. 197; 4 Am. & Eng. Corp. Cases, 342, 344. *Third.* The second notice of incorporation, published in December, 1889, not being within the three months prescribed by the Iowa statute, was merely nugatory. The statute prescribes the date and period, equally with the contents, of the publication required to secure exemption from individual liability. *Bigelow v. Gregory*, 73 Ill. 200; 1 Morawetz on Corporations, secs. 27–8.

THOMPSON, J.—This action was brought by the creditor of a manufacturing corporation, organized under the laws of the state of Iowa but having its chief place of business in Missouri, to charge the defendant as a stockholder of such corporation for a debt, due by the corporation to the plaintiff upon an open account, in the sum of $1,535.50. A trial in the circuit court, before the judge sitting as a jury, resulted in a verdict and judgment for the plaintiff for the

amount claimed, from which the defendant prosecutes this appeal.

In determining the questions presented by the appeal, we have had the very best aid from counsel on both sides, not only in the form of oral argument, but also in the form of very elaborate printed statements and arguments. We do not consider it incumbent upon us to go over all the details of these printed statements and arguments in drawing up this opinion, because we are convinced that the judgment must be affirmed upon a consideration of the law of Iowa as established by decisions of the supreme court of that state, when applied to certain undisputed facts shown by the record in this case.

The indebtedness of the corporation to the plaintiff in the sum stated is not controverted upon the pleadings or the evidence. It is averred in the petition and shown by the evidence that, subsequently to contracting the indebtedness sued on, the corporation made an assignment for the benefit of its creditors at St. Louis, Missouri, under the statute of this state; that the assignee has qualified and taken charge of the assets of the corporation; that the plaintiff's claim has been duly presented to assignee and by him allowed as a demand against the assets of the corporation. A paper inadvertently copied into the record shows that, since the date of the judgment, two payments have been made by the assignee upon the claim. These credits cannot be noticed here, because they could not have been brought to the attention of the trial court; but the defendant may have the benefit of them, if so entitled, as credits on the judgment.

The petition, which is quite full and detailed, bases the right of the plaintiff to charge the defendant with the indebtedness of the corporation on the ground that, although the corporation had become organized as

such under the statutes of Iowa, yet, by reason of failing to comply with one of the provisions of those statutes in respect of publishing in a newspaper a certain notice, the corporators had not acquired exemption from individual liability for the debts of the corporation. The answer, which is also quite long and detailed, controverts the position of the plaintiff that such is the effect of the statutes of Iowa, as construed by the supreme court of that state, and also avers that, under those statutes, a creditor of a corporation cannot charge its stockholders without first having reduced his claim to judgment, and having had an execution issued against the corporation *nulla bona*. With this brief preliminary statement we shall take up and dispose of the questions arising upon the record, to which our attention has been invited by the counsel for the defendant, stating so much of the evidence as is applicable to each question, without undertaking to detail the evidence generally, and dealing with them in the order in which they are presented in the defendant's printed argument. All the questions, except the one relating to the judgment being excessive (which we shall dispose of incidentally), arise under the single assignment of error that the court refused to give an instruction requested by the defendant in the nature of a demurrer to the evidence.

I.   The first proposition advanced in support of this assignment is, that the defendant was not a stockholder in the Eagle Glass & Metal Company (the corporation hereinbefore referred to) at the time the debt was contracted. The record conclusively shows that this assignment is untenable. Laying all other elements out of view, it conclusively appears that, prior to the dates of the contracting of this indebtedness, the defendant purchased one share of the capital stock of the corporation, paying therefor the sum of $1 to qualify him for his office of director, which office he

held at the date of the contracting of the indebtedness. This made him a stockholder, and, for the purpose of charging him with liability as a stockholder under the Iowa statute on which this action is based, the holding of one share has the same effect in law as the holding of any number of shares.

Aside from this, we understand that this case was submitted to the circuit court on the theory of its being an action at law, as the record recites that the parties waived a jury. If the purchase of this one share were out of the way, the evidence in the record would amply support the conclusion of the circuit judge that the defendant was a stockholder at the time of the contracting of this indebtedness. He was one of the original incorporators, his name having been signed to the articles of incorporation. He was, from first to last, a director and officer. He was one of the active managers. He put money into the concern to further its objects. He signed certificates of stock as its assistant secretary. He was one of the signers of the contract drawn up by the seven corporators and signed prior to the date of the articles of association, describing with the most careful details the manner in which the stock should be disposed of. In fact, the evidence amply justifies the conclusion that he was from first to last a *corporator* and an *active member* of the corporation. By the laws of Iowa, a single person may become incorporate. Iowa Code, 1873, sec. 1088. By those laws, as construed by the supreme court of that state, a corporation for pecuniary gain may exist and do business as such without distributing its capital stock or having stockholders. *Johnson v. Kessler*, 76 Iowa, 411. The statute under which it is sought to charge the defendant is as follows: "A failure to comply substantially with the foregoing requisitions in relation to organization and publicity renders the individual property of

the stockholders liable for the corporate debts." In its application to a corporation, which may assume to do business without formally issuing any stock, the word "stockholders" in this statute must necessarily be construed to mean corporators or members who have a direct financial interest in the business of the corporation, with a power to participate in the profits and in the conduct of its affairs; otherwise the statute would in such cases be nugatory. If necessary to uphold the decision of the circuit court, we should, therefore, have no hesitation in saying that such is its meaning when applied to a case where, as in this case, the co-adventurers have seen fit to transfer their shares back and forth upon their own books, without putting share certificates upon the market or even detaching them from their stubs.

Outside of this, the evidence shows that the corporation was organized for the purpose of purchasing from two persons who became its members, William H. Warren and Thomas F. Kennedy, a secret process for ornamenting glass, brass and other metals, known as "the Warren process;" that the value of this process depended on its being kept a secret process; that, prior to the incorporation, a contract was made and signed by all the seven corporators, including Warren and Kennedy and this defendant, in which Warren and Kennedy were parties of the first part and the other five incorporators, including this defendant, were parties of the second part. This contract undertook to provide, as among the associates, for the creation of the future company to purchase and work this secret process, and for the distribution of all of its capital stock. The capital stock was to be worth $2,000,000, divided into shares of $10 each, which shares were to be issued as "fully paid up and non-assessable." The contract recited "And of said shares, the second

parties [that is, the five associates other than Warren and Kennedy, including this defendant] shall have and own one-fourth, or fifty thousand shares of the same; and the said first parties [that is, Warren and Kennedy] shall have and own seventy-five thousand thereof, and the remaining seventy-five thousand shares shall be sold at such price and terms as said board of directors may fix and determine, and out of the proceeds of such sale there shall be paid said first parties the sum of $150,000; but the money thus to be raised is in no manner whatever to create a liability on said second parties, or either of them, but the same is to come alone from the sale of said stock, and not otherwise. For said fifty thousand shares, said second parties are to pay into the hands of Dr. F. L. Haydel, trustee, for the corporation herein contemplated, the sum of $5,000; $1,000 to be by said trustee paid to said parties at the execution of this contract, and the balance, or the $4,000, is for the sole use of said proposed company in starting said business, and to be paid out for the same, as said trustee may deem wise and for the best interest of the same." This contract was signed on the twenty-first of June, 1889, and the articles of association were signed five days later. Without going into all details of the transactions had among the co-adventurers, and of the manner in which the stock was transferred and retransferred by them, without the detaching of the stock certificates from their stubs, it is important to call attention to the fact that on December 3, 1889, some changes of membership having in the meantime supervened, a supplemental contract was entered into modifying the former contract, by which the associates undertook to make a new distribution of the shares of the company, which had been formed and was in existence as a corporation. By this latter contract it was provided that: "Of the

two hundred thousand shares of the capital stock of said company one-half thereof shall go to and belong to said company, to be solely and absolutely in its control and ownership; that the five parties above named and their successors [the parties of the second part to the original contract, including this defendant], or the successors of either of them, shall have ten thousand shares each, as by the contract, of which this is a modification, *they are entitled*, and the remaining fifty thousand shares shall belong to said Warren and Kennedy absolutely," etc. In pursuance of the contract of June 21, 1889, each of the associates, including this defendant, according to the testimony of the defendant himself, paid in the $1,000 making the aggregate of $5,000, which the contract provided that they should pay for fifty thousand shares of the stock of the company. This entitled them to those shares. This made each one of them a proprietor of the stock of the company to the extent of ten thousand shares. Whether they could hold the shares as fully paid up, if a creditor of the corporation were proceeding to charge them on the ground of not having paid for their shares, is a question which we need not consider, because that is not the theory of this action. The recitals from these two contracts in connection with the evidence of the defendant show that he became a proprietor in the company and a shareholder to the extent of this number of shares. And whatever might be thought of the contract which was made prior to the date when the corporation was formed, an attempt to argue that the associates could, by a contract made after it was formed, apportion and dispose of all of its shares, without themselves being shareholders, would seem to be hopeless. Taking all the facts together, the case before us seems to be one of the strongest possible cases in which one, who has acted as a shareholder

and proprietor in a company, is estopped as against creditors from repudiating that relation. The mere fact that certificates were not detached from the certificate book and formally distributed, cuts no figure in the case; since it is well settled in this state and elsewhere that the certificate is only one of the evidences of the title of the shareholder, and that the issuing to him of a formal certificate is not necessary for the purpose of charging him with the liability of a shareholder in favor of a creditor. *Schaeffer v. Ins. Co.*, 46 Mo. 248; *Hawley v. Upton*, 102 U. S. 314; *Burr v. Wilcox*, 22 N. Y. 551; *Chase v. Bank*, 19 Pick. 564.

II. The next proposition advanced by the defendant in support of this assignment of error is, that this is not a common-law action to charge the defendant with liability as a partner at common law, on the ground that a corporate organization had not been effected, but that it is a statutory action proceeding upon a statute of Iowa. This proposition is obviously sound, and we do not understand that it is controverted. The petition recites, in substance, the formation of a corporation and the creation by the corporation of the indebtedness declared on, and the establishment of such indebtedness against the assets of the corporation, by proving it as a claim before the assignee of the corporation. But the petition also sets up a state of facts which, if true, shows that notwithstanding the formation of the corporation, by reason of failure to perform a certain condition upon which immunity was granted by the statutes of Iowa to the stockholders from the payment of corporate debts, those stockholders were left liable for the payment of such debts. We pass from this proposition of counsel for the defendant with the concession that the liability of the defendant must be determined upon a state of

admitted facts by the statute law of Iowa, as construed by the supreme court of that state.

III. The next proposition in support of the assignment, that the court should have granted an instruction for a nonsuit, is that the provisions of the statute law of Iowa have not been complied with, in that the plaintiff has not prosecuted his claim to a judgment against the corporation, and sued out execution against the corporation which execution has been returned *nulla bona*, showing that he has exhausted his remedy against the corporation, as he would be required to do in order to support a creditor's bill against the defendant. This argument is based chiefly upon the following section of the Code of Iowa: "In none of the cases contemplated in this chapter, can the private property of the stockholders be levied upon for the payment of corporate debts, while corporate property can be found with which to satisfy the same; but it will be sufficient proof that no property can be found, if an execution has issued on a judgment against the corporation, and a demand has been thereon made of some one of the last acting officers of the body for property on which to levy, and if he neglects to point out any such property." Code of Iowa, 1873, sec. 1083. Similar expressions are also found in sections 1082 and 1084 of the same body of statutes. We need not set out these statutes in further detail, because they have received a definite interpretation at the hands of the supreme court of Iowa, and that interpretation is opposed to the position of counsel for the defendant in this case. In *Marshall v. Harris*, 55 Iowa, 182, the plaintiff was a judgment creditor of the pretended corporation, and had collected a part of his judgment from the corporation, and sued the defendants as stockholders to recover the balance, on the ground that those organizing the corporation had not complied

with the provisions of the statutes in regard to publicity. He proceeded under section' 1068 of the Code of Iowa, upon which the present action is founded. That section (again quoting it for convenience) recites that "a failure to comply substantially with the foregoing requisitions in relation to organization and publicity renders the individual property of the stockholders liable for the corporate debts." The answer averred, in substance, that the association had made an assignment to one Delzell; that the plaintiff's judgment, upon which the action was brought, had been rendered against Delzell, as assignee; that one of the payments made upon the judgment had been made by him; and that he was still assignee and had funds in his hands for the discharge of the debts of the association. It will be perceived that this defense sets up matter similar to that which was pleaded by the plaintiff and not denied by the defendant in the present case. A demurrer was sustained to the answer, and the supreme court affirmed the judgment. ADAMS, C. J., in giving the opinion of the court, disposed of this defense as follows: "In our opinion the defendants, under section 1068 of the Code above cited, became primarily liable for the debts of the association, and might have been sued in the first instance. Their relation to creditors is not, we think, different from what it would have been if no attempt had been made at incorporation. Credit is presumed to have been extended in reliance upon the individual liability of the members. In our opinion the demurrer was properly sustained."

The plaintiff in the present case is a judgment creditor of the corporation in the same sense as was the plaintiff in that case; for he has prosecuted his demand to an allowance before the assignee selected by the corporation itself under the Missouri statute to wind up

its affairs, and the allowance of such an assignee is a judgment. *Nanson v. Jacob*, 93 Mo. 331. As already suggested, whatever payments may have been made or may still be made by the assignee subsequently to the date of the judgment of the circuit court in this case, will become credits upon the judgment and upon any execution issuing thereon; and, if not so allowed, the court will have power to see that they are allowed, on a motion in the nature of an *audita querela* to correct the execution.

But, if any doubt could be left upon this question, it seems to be absolutely concluded by the decision of the supreme court of Iowa in *Clegg v. Grange Co.*, 61 Iowa, 121, which, like the action before us, was an action upon an account to charge the defendants as members of the Hamilton & Wright County Grange Company, described in the petition as an unincorporated company or copartnership. The company had attempted to clothe itself with corporate immunities; but the plaintiff proceeded against its members as partners, upon the ground that they had not become incorporate by reason of having failed to comply with a condition precedent established by the statute, without compliance with which no incorporation could be effected. That condition precedent was, as in the case before us, the publication of the notice required by section 1063 of the Iowa Code of 1873. Instead of publishing a notice stating the facts required by that section, the co-adventurers published a notice which contained merely their articles of incorporation. These articles failed to show the place of transacting business by the corporation, and the time of the commencement and termination of its corporate existence, as required by the statute. For this reason it was held not to be such a notice as complied with the requirements of the statute. Without any extended reasoning upon the ques-

tion the court said: "There was, then, 'a failure to comply substantially' with the requirements of the statute in regard to notice. The individual property of the stockholders is, therefore, liable for the corporate debts. Code, sec. 1068." This decision conclusively shows, what the language of the statute itself makes too plain for much discussion, that the publication of the notice prescribed by section 1063 within the time prescribed by section 1064 is a condition precedent, not necessarily to the existence of the corporation as an artificial body, but to clothing the members with the immunities of corporators. Section 1064, as amended and in force prior to the transactions in question, reads as follows: "The corporation may commence business as soon as the articles of incorporation are filed in the office of the recorder of deeds, and their doings shall be valid if a publication in a newspaper is made, and the articles recorded in the office of secretary of state within three months from such filing in the recorder's office." This plainly implies that, unless such a publication is made within three months their doings shall not be valid as corporate acts, at least so far as an exemption of their members from personal liability for their debts is concerned.

There are decisions, in this state and also in other jurisdictions, which would be applicatory to the question before us, if it were not a question which is conclusively governed by the interpretation which the highest court of Iowa has put upon the statutes under which this corporation was organized. An examination of these additional cases would be interesting, though irrelevant. It would probably serve no more than to show that, in respect of this and similar questions, courts have taken a distinction between acts required to be done by corporators in perfecting their corporate organizations, which are conditions precedent

to the coming into existence of the corporation, and acts which are regarded as conditions subsequent and which do not prevent the immunities of corporators from attaching.

IV. The next proposition advanced in support of this assignment of error is that the statute of Iowa, upon which the action is founded, is *penal* and not contractual, and that it will, hence, not be enforced in Missouri. The proposition is, of course, well settled that penal statutes are local, and are not enforced on any principle of comity outside of the jurisdiction enacting them. We are of opinion that the statute, under which this action is brought, is not in the nature of a penal statute at all. The classes of statutes, referred to as penal statutes by counsel for the defendant, are statutes imposing a personal liability, generally upon directors and other officers of corporations and sometimes also upon stockholders for the failure to do certain prescribed things, such as to file certain reports or to give certain notices; or for the doing of certain prohibited things, such as the contracting of corporate debts beyond the prescribed limit, the declaring of fictitious dividends, or the contracting of corporate debts when the corporation is insolvent. None of these statutes have any resemblance to the one before us. As already seen, the construction placed by the supreme court of Iowa upon this statute is that it creates a condition precedent, which must be performed by those who organize a corporation before an immunity from liability for the debts of the corporation attaches. The meaning is that, when the legislature enacted the statute, it said to those desiring to avail themselves of its provisions: "You may become incorporated in the mode herein provided for, and you may exempt yourselves from personal liability for the debts of the corporation which you form, provided you

give to the public a certain prescribed notice by publication in a prescribed way, and within a prescribed time; and unless you do this the state withholds from you the franchise or immunity of being exempt from liability for the debts which you incur in your character of a corporation aggregate, and leaves you to your common-law liability as partners." There is no element of penalty in such a statute, and for the plain reason that it does not take away from the corporators anything which the state has already granted to them. It merely withholds an immunity which the state is at perfect liberty to grant or to withhold, and hence to grant, if at all, upon its own conditions.

This becomes even more plain in its application to a corporation like the one before us. Something is said, in the printed argument, submitted on behalf of defendant, as to the right of citizens of one state to incorporate under the laws of another for the purpose of carrying on business in their own state; and it is argued that the law on this subject is progressing without definite results as yet. We do not proceed upon the idea, that the gentlemen who, desiring to form a corporation for the purpose of carrying on a manufacturing business in Missouri, found that the incorporation laws of Missouri were not good enough for their purposes, or, for some other reason satisfactory to themselves, determined to procure an incorporation under the laws of a sister state, placed themselves, in respect of their personal liability, in any worse condition than if their plant and place of business had been established in such other state. Such corporations have become the serious concern of the legislatures of many of the states, and in recent years have come to be definitely known as "tramp corporations." Whatever may be said about them, it is clear that the most that can be said in favor of the franchises, which their

members acquire in the state of their *de facto* domicile, cannot be greater than those which they would have acquired, if they had remained and conducted their business in the state of their legal domicile, under whose statutes they were organized. In other words, a number of gentlemen residing in Missouri, desiring to carry on a business under the form of a corporate organization in Missouri, cannot, under any principle of public policy with which we are acquainted, be allowed to acquire in Missouri, by virtue of their incorporation in Iowa, any greater rights than they have acquired in Iowa. They cannot, by the shift of incorporating in another state, import into this state, under the guise of being exempt from foreign penal statutes, any greater immunities or franchises than they possess in the state of their incorporation.

We have been referred to the decision of the supreme court of Missouri in *Kritzer v. Woodson*, 19 Mo. 327, in support of the proposition, that the liability sought to be enforced in this action is penal. That decision is not at all in point, because the effort there was to subject the directors of a corporation to a liability under a statute for contracting debts in behalf of the corporation in excess of a prescribed limit. Such statutes are generally regarded as penal even as regards directors, and for stronger reasons as regards stockholders. We are also cited to the case of *Ochiltree v. Railroad*, 54 Mo. 117. In that case there is a *dictum* by Judge NAPTON (citing *Kritzer v. Woodson*, *supra*, which is not in support of the dictum), that the double liability of stockholders, created by the constitution of this state of 1865, which was under consideration in that case, was in the nature of a penalty. The mere superadded individual liability of a stockholder to pay the amount of his stock subscription over again, if necessary to liquidate the debts of the corporation when

it became insolvent, has never been regarded by the courts of this country as a penalty. It is a part of the contract which he enters into, in plain view of the statute, when he becomes a member of the corporation. The meaning is that, to this extent, the state withholds from him the usual grant of immunity from liability for the debts of the corporation. Such statutes are constantly enforced outside of the states enacting them, as, for instance, in actions prosecuted in the state courts against non-resident stockholders of insolvent national banks to subject them to this species of liability.

V. We have endeavored to dispose of these questions perhaps out of their logical order, but in the order in which our attention has been called to them in the defendant's argument. The last question is perhaps the one which should have been first disposed of, and which we should not think it necessary to touch upon at all, but for the fact that it involves a challenge on the part of counsel for the defendant. Their contention is that the notices published in behalf of the Eagle Glass & Metal Company were a sufficient compliance with the Iowa statute. That statute reads as follows:

"Sec. 1062. A notice must also be published, for four weeks in succession, in some newspaper as convenient as practicable to the place of business.

"Sec. 1063. Such notice must contain: 1. The name of the corporation and its principal place of transacting business. 2. The general nature of the business to be transacted. 3. The amount of capital stock authorized, and the times and conditions on which it is to be paid in. 4. The time of the commencement and termination of the corporation. 5. By what officers or persons the affairs of the corporation are to be conducted, and the times at

which they will be elected. * * *. 7. Whether private property is to be exempt from corporate debts.

"Sec. 1064 (as amended by chapter 23 of the Acts of the Seventeenth General Assembly). The corpora-' tion may commence business as soon as the articles of incorporation are filed in the office of the recorder of deeds, and their doings shall be valid if the publication in a newspaper is made, and the articles recorded in the office of the secretary of state within three months from such filing in the recorder's office."

"Sec. 1068. A failure to comply substantially with the foregoing requisitions in relation to organization and publicity renders the individual property of the stockholders liable for the corporate debts."

The articles of incorporation, signed by four of the co-adventurers, among them this defendant, bear date as of the twenty-sixth of June, 1889. The notice which was made, and which was intended to comply with the statute, was published in the *Daily Gate City*, a newspaper printed in Keokuk, Lee county, Iowa, four times at intervals of a week, on first, eighth, fifteenth and twenty-second of September, 1889, all of which days were Sundays. The notice, as published, failed to comply with the statute in the following particulars: *First.* It stated that "the amount of capital stock shall be $5,000,000 divided into shares of $10 each, to be paid when called for by board of directors." As already seen, the capital stock was in point of fact $2,000,000, and the shares were not issued in the ordinary way, to be paid for in assessments or in calls as made by the board of directors, but they were issued as "fully paid up and non-assessable," and were apportioned by a contract among the co-adventurers antedating the articles of incorporation, under which apportionment a number of them were to be paid for

by Warren and Kennedy by the disclosure of a secret process for ornamenting glass, etc., of an unknown and speculative value. Another portion amounting to fifty thousand shares was, as already seen, to go to the other five co-adventurers in consideration of $5,000, furnished by them, $1,000 each, towards starting the company; while the remaining shares were to be vested in a trustee as "treasury stock," and sold to raise the actual working capital of the company. Such being the actual distribution of the stock among the proprietors, a notice stating to the public that the shares were "to be paid when called for by the board of directors," was not, and could not have been seriously intended to be, a compliance with the provisions of the statute which requires the notice to state "the time and conditions upon which it is to be paid in." The notice was well calculated to deceive the public into what an ordinary business man would understand from its language—that the stock was issued in the ordinary way as assessable stock, subject to assessments or calls made by the directors according to the needs of the company; whereas, in point of fact, not a single share of it was ever issued or intended to be issued in that way. Even the treasury stock was intended to be put on the market at what could be obtained for it. One resolution authorized the sale of some of it at $3 per share, and another at $1 per share, whereas its par value was $10 per share.

The notice was also defective in another particular, which obviously grew out of a clerical or typographical error. It recited: "Business was commenced June 28, *1899*, and corporation to continue twenty years from said date, renewable from time to time by vote of stockholders." If this defect stood alone, there would be ground for argument that it involved an obvious typographical error which would

correct itself in the mind of the ordinary reader, since it would be absurd to say that business *was* commenced June 28, 1899, but that as the year of publication was 1889, and as the date of publication was later than June 28, and as the statute required the publication to be made within three months from the filing of the articles in the office of the recorder of deeds, every intelligent man would understand this to be a typographical error for 1889.

It is argued that the defect in the notice, which consisted in using the number *five* instead of *two* in expressing the amount of capital stock of the corporation, making it read five millions instead of two millions, is also to be rejected as a typographical error. It is quite immaterial whether it is a typographical error or not, since there is nothing in the context from which the ordinary reader would or could correct the error. The statute imposed upon the co-adventurers the obligation of stating "the amount of capital stock authorized," and they did not state it correctly; and for this reason they did not comply with the statute so as to exempt themselves from personal liability, under the decisions of the supreme court of Iowa already referred to. The case is not different in principle from the case of *Clegg v. Grange Co.*, 61 Iowa, 121, already referred to, where the co-adventurers published their entire articles of incorporation, which articles were themselves defective in not stating the time of the commencement and termination of the corporate existence; for which reason it was held that the members did not become incorporate in the sense which exempted them from the personal liability of partners. The notice, as published, being thus radically defective, it is not necessary to consider whether the publication on Sunday was such a publication as would otherwise have complied with the statute.

VI.   The co-adventurers, discovering the defect-
iveness of this publication, undertook to cure it by the
publication of a subsequent notice, which publication
began on the nineteenth of December, 1889, and ended
on the ninth of January, 1890.   This notice correctly
stated the amount of the capital stock and the date
of the commencement and termination of the corpor-
ation.   But, instead of stating the actual facts as
to the times and conditions on which the capital
stock was to be paid in, as demanded by the
statute, it stated exactly what the previous notice had
stated—that it was "to be paid when called for by the
board of directors."   Even if the provision of the
statute (Iowa Code of 1873, sec. 1064, above quoted),
which demands the publication of this notice within
three months of the filing of the articles of incorpora-
tion in the office of the recorder of deeds, were out of
the way, yet it is plain that the second publication did
not help out the first, because it was defective in the
same way as the first in one of the most essential par-
ticulars— that of advising the public as to the times
and conditions on which the capital stock was to be
paid in.   Anyone would surely suppose that a corpor-
ation advertised as having a capital stock of $2,000,000
divided into shares of $10 each, to be paid, "when
called for by board of directors," would be entitled to
more credit than a corporation having a capital of
$2,000,000, all of it issued as "paid up and non-assess-
able," one-fourth of which had been, by the supple-
mental contract of December 3, apportioned to two of
the co-adventurers in payment of a supposed secret
process of manufacture which they had never disclosed,
another fourth apportioned to five of the co-adventurers
in exchange for $5,000 advanced by them, and the
remaining one-half vested in a trustee as "treasury

stock," to be sold for the purpose of raising capital at such prices as might be obtained for it.

These observations seem to dispose of all the arguments advanced in support of the assignment, that the court committed error in refusing the defendant's instruction in the nature of a demurrer to the evidence, and the judgment is accordingly affirmed. ROMBAUER, P, J., concurs. BIGGS, J., concurs in the result.